[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15166
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 19, 2012
JOHN LEY
CLERK

D.C. Docket No. 2:10-cv-00206-WCO


JASON A. MILLER,

                                        Plaintiff - Appellant,

                        versus

CHASE HOME FINANCE, LLC,

                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 19, 2012)

Before CARNES, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Jason A. Miller appeals from an order of the district court dismissing his

complaint for failure to state a claim. After a thorough review of the record and briefs, we affirm.

I.

Miller owned a parcel of real property in Hiawassee, Georgia, which he obtained by securing a mortgage loan from the predecessor of the defendant, Chase Home Finance, LLC (Chase). In February 2009, Miller requested a loan modification from Chase, citing financial difficulties. Chase agreed to temporarily modify the terms of Miller's loan agreement, but in August 2010, Chase notified Miller that it would not extend a permanent loan modification to him.

Consequentially, Miller filed suit, alleging that Chase failed to comply with its obligations under the federal Home Affordable Modification Program (HAMP) by declining to issue him a permanent loan modification. According to Miller, this failure gave rise to claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, and (3) promissory estoppel. The district court dismissed Miller's complaint for failure to state a claim, finding that HAMP does not provide a private cause of action and that, even if his claims were independent of HAMP, they failed as a matter of law.[1] Miller appeals.

---

[1] The district court also denied Miller's request for leave to amend his complaint to add a claim of negligent implementation of HAMP, finding that Miller could not demonstrate that Chase owed him a legal duty under HAMP sufficient to state a negligence claim. Although

2

## II.

We review the district court's dismissal for failure to state a claim, including its legal conclusion that HAMP does not provide a private right of action, *de novo*. *See Love v. Delta Air Lines*, 310 F.3d 1347, 1351 (11th Cir. 2002) (applying *de novo* review to determine whether a statute creates a private right of action); *McKusick v. City of Melbourne, Fla.*, 96 F.3d 478, 482 (11th Cir. 1996) ("*De novo* review applies to grants of motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted."). The parties agree that Georgia substantive law governs any part of Miller's claims independent of HAMP.

## III.

During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201-5261. EESA charges the Secretary of the United States Department of the Treasury with acting in a manner that "preserves homeownership and promotes jobs and economic growth." *Id.* § 5201(2)(B). To this end, the Department of the Treasury created

---

Miller attempts to argue that he has stated a negligence claim in his appellate brief, he does not argue that the district court erred in denying his request for leave to amend. Thus, his negligence arguments are abandoned. *Greenbriar, Ltd. v. City of Alabaster*, 881 F.2d 1570, 1573 n.6 (11th Cir. 1989).

the Making Home Affordable Program, a program that included HAMP.

HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Servicers are obliged to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification. U.S. Dep't of Treasury, Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages at 27 (Dec. 15, 2011). To assure that servicers comply with the guidelines, the Secretary designated Freddie Mac to conduct compliance assessments of HAMP participants. *Id.* Neither HAMP nor EESA expressly creates a private right of action for borrowers against loan servicers.

This court has not addressed, in a published opinion, whether there is an implied private right of action under HAMP. In determining whether such a remedy exists, this court considers the following questions:

> (1) is the plaintiff one of the class for whose *especial* benefit the statute was enacted; (2) is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) is it consistent with the underlying purposes of the legislative scheme to imply a remedy for the plaintiff; and (4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law.

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Inves.*, 553 F.3d 1351, 1362 n.14 (11th Cir. 2008) (internal quotation marks omitted).

When we apply these factors to HAMP and EESA, it is clear that no implied right of action exists. First, EESA and HAMP were designed to "provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the United States." 12 U.S.C. § 5201(1). EESA was not passed for the "especial benefit" of struggling homeowners, even though they may benefit from HAMP's incentives to loan servicers.

Second, there is no discernible legislative intent to create a private right of action; in fact, the legislature gave the Secretary the right to initiate a cause of action, via the Administrative Procedure Act. *Id.* § 5229(a)(1). Third, providing a private right of action against mortgage servicers contravenes the purpose of HAMP—to encourage servicers to modify loans —because it would likely chill servicer participation based on fear of exposure to litigation. And fourth, "[c]ontract and real property law are traditionally the domain of state law." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 174 (1982).

Because none of the relevant factors favor an implied right of action, we conclude that no such right exists. *See Thompson v. Thompson*, 484 U.S. 174, 179 (1988) ("The intent of Congress remains the ultimate issue, however, and unless

this congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist."). Miller therefore lacks standing to pursue his breach of contract, breach of implied duty of good faith and fair dealing, and promissory estoppel claims insofar as they are premised on an alleged breach of Chase's HAMP obligations.

To the extent Miller's claims fall outside of the scope of HAMP, they fail as a matter of law. First, Miller does not argue on appeal that his breach of contract claim is independent from Chase's obligations under HAMP. He has therefore abandoned any such argument. *Greenbriar*, 881 F.2d at 1573 n.6. But Miller does argue that Chase breached its duty of good faith and fair dealing under his original loan agreement by refusing to permanently modify his loan. Under Georgia law, however, that duty "cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability." *Onbrand Media v. Codex Consulting*, 687 S.E.2d 168, 174 (Ga. Ct. App. 2009).

Miller also argues that Chase is liable under a theory of promissory estoppel for declining to issue him a permanent loan modification. But, as the district court emphasized, recovery on a theory of promissory estoppel under Georgia law is

6

possible only if the defendant made a promise upon which the plaintiff reasonably relied. O.C.G.A. § 13-3-44(a). And here, Miller did not set forth any factual allegations that Chase promised to permanently modify the loan. Indeed, Miller's allegations indicate that Chase told Miller only that it would temporarily modify the terms of his loan. Accordingly, Miller's promissory estoppel claim fails, regardless of its reliance on HAMP.

**AFFIRMED.**