**FOURTH DIVISION**
**MILLER, P. J.,**
**DOYLE, P.J. and Boggs, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 28, 2012**

# In the Court of Appeals of Georgia

A12A0957. U.S. BANK, N.A. v. OTIS WAYNE PHILLIPS.

MILLER, Presiding Judge.

This case arises out of foreclosure proceedings instituted by U. S. Bank, N.A. against the residence owned by Otis Wayne Phillips. Phillips filed suit seeking damages and an injunction to prevent foreclosure, alleging that U. S. Bank had failed to properly evaluate his request for a loan modification under the federal Home Affordable Modification Program ("HAMP"). Specifically, Phillips's complaint set forth claims for third-party beneficiary breach of contract; breach of the implied covenant of good faith and fair dealing; negligent implementation of HAMP; and wrongful attempted foreclosure. U.S. Bank filed a motion to dismiss Phillips's claims, arguing that he failed to state a claim upon which relief can be granted. The trial court denied U. S. Bank's motion.

We granted U. S. Bank's application for interlocutory appeal to consider the propriety of the trial court's order. The instant appeal ensued. U. S. Bank contends that dismissal of the complaint was required as a matter of law since Phillips was not a third-party beneficiary to the HAMP contract between U. S. Bank and the federal government; HAMP does not provide a private right of action to Phillips; and Phillips's claims failed to set forth viable causes of action. For the reasons that follow, we affirm the dismissal as to the claims for third-party beneficiary breach of contract, breach of the implied covenant of good faith and fair dealing, and negligent implementation of HAMP. We vacate the trial court's decision as to the claim for wrongful attempted foreclosure and remand this case pending the Georgia Supreme Court's issuance of a decision in *You v. JP Morgan Chase Bank, N. A.*, Case No. S13Q0040 (docketed Sept. 13, 2012). Accordingly, the trial court's decision is reversed in part and vacated in part, and this case is remanded with direction.

> Under OCGA § 9-11-12 (b) (6), a motion to dismiss for failure to state a claim upon which relief can be granted should not be sustained unless (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. In

2

deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.

(Citation and punctuation omitted.) *Anderson v. Daniel*, 314 Ga. App. 394, 395 (724 SE2d 401) (2012).

So viewed, the complaint alleged that in December 2007, Phillips executed a security deed pledging his residence located at 437 Barton Lane, Villa Rica, Georgia, as collateral for a loan issued by PHM Financial Incorporated d/b/a Professional Home Mortgage. The security deed listed Mortgage Electronic Registration Systems ("MERS") as the beneficiary. U.S. Bank later became the servicer for the mortgage loan.

Phillips subsequently was unable to make his mortgage payments and defaulted on the loan. In 2010, Phillips requested a loan modification under HAMP. U. S. Bank had signed a Servicer Participation Agreement ("SPA") with the federal government, agreeing to participate in HAMP. The SPA incorporated a "Program Documentation," which set forth guidelines, procedures, instructions, documentation, and directives issued by the U. S. Department of Treasury, Fannie Mae, or Freddie Mac in connection with the duties of participating servicers. The Program Documentation

3

required participating servicers to evaluate delinquent loans for HAMP modifications and to collect the borrower's financial information to determine whether HAMP was appropriate for the borrower. Phillips alleged that U. S. Bank failed to properly evaluate his application for a HAMP modification. U.S. Bank denied Phillips's application and attempted to foreclose on his residence.

Phillips filed the instant complaint against U. S. Bank, alleging four causes of action: (1) third-party beneficiary breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent implementation of HAMP; and (4) wrongful attempted foreclosure. We address each of Phillips's claims in turn below.

1. *Third-Party Beneficiary Breach of Contract.* U. S. Bank contends that Phillips lacks standing to pursue a breach of contract claim based upon HAMP since HAMP did not create an actionable third-party beneficiary right. We agree.

Phillips does not claim that he was a party to the HAMP SPA between U. S. Bank and the federal government. Rather, Phillips claims that he is entitled to sue for enforcement of the HAMP SPA as a third-party beneficiary.

> [I]n order for a third party to have standing to enforce a contract under OCGA § 9-2-20 (b), it must clearly appear from the contract that

4

it was intended for his benefit. The mere fact that he would benefit incidentally from performance of the agreement is not alone sufficient. There must be a promise by the promisor to the promisee to render some performance to a third person, and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary.

(Punctuation and footnote omitted.) *Danjor, Inc. v. Corporate Constr., Inc.*, 272 Ga. App. 695, 697 (1) (613 SE2d 218) (2005). Although the Georgia state appellate courts have not previously addressed the issue as to whether HAMP created third-party beneficiary standing to enforce HAMP, the federal courts in Georgia have decided this issue and have consistently rejected this claim.

In *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1115-1116 (III) (11th Cir. 2012), the federal appellate court summarized the legislative purpose for the enactment of HAMP as follows:

During the economic crisis of 2008, Congress passed the Emergency Economic Stabilization Act of 2008 (EESA), 12 U.S.C. §§ 5201-5261. EESA charges the Secretary of the United States Department of the Treasury with acting in a manner that "preserves homeownership and promotes jobs and economic growth." Id. § 5201(2)(B). To this end, the Department of the Treasury created the Making Home Affordable Program, a program that included HAMP.

5

HAMP is designed to prevent avoidable home foreclosures by incentivizing loan servicers to reduce the required monthly mortgage payments for certain struggling homeowners. Servicers are obliged to abide by guidelines promulgated by the Secretary when determining a mortgagor's eligibility for a permanent loan modification. U.S. Dept. of Treasury, Making Home Affordable Program, Handbook for Servicers of Non-GSE Mortgages at 27 (Dec. 15, 2011). To assure that servicers comply with the guidelines, the Secretary designated Freddie Mac to conduct compliance assessments of HAMP participants.

Id.

It is generally recognized that "government contracts that benefit members of the public are assumed to create incidental beneficiaries absent a clear intent to the contrary." (Citations and punctuation omitted.) *Warren v. Bank of America*, No, 4:11-cv-70, 2011 U.S. Dist. LEXIS 55777, at * 7 (III) (A) (1) (S.D. Ga. May 24, 2011). Notably, the federal courts have explained that EESA and HAMP were not passed for the special benefit of struggling homeowners, even though they incidentally benefit from HAMP's incentives. See *Miller*, supra, 677 F.3d at 1116 (III); see also *Hall v. Wells Fargo Bank*, No. 7:11-cv-63 (HL), 2011 U. S. Dist. LEXIS 104615, at * 6-7 (III) (a) (i) (M .D. Ga. Sept. 15, 2011) (ruling that HAMP "was not created with a certain plaintiff in mind; instead, the statute was created to assist homeowners and

financial institutions in general.") (citation and punctuation omitted). As such, Georgia's federal courts have held that homeowners are incidental beneficiaries of the loan servicers' participation in HAMP, and that Congress did not intend to endow homeowners with third party beneficiary rights to enforce HAMP.[1] See *Miller*, supra, 677 F.3d at 1116-1117 (III); *Finch v. Bank of America*, No. 3:12-cv-14 (CAR), 2012 U. S. Dist. LEXIS 49294, at *4-6 (M. D. Ga April 9, 2012) (noting that "a third-party beneficiary status of a mortgagor within the Agreement has not been recognized by any court in the Eleventh Circuit[.]") (citations and punctuation omitted); *Jean v. American Home Mtg. Servicing, Inc.*, No. 1:11-cv-1101-WSD, 2012 U. S. Dist. LEXIS 45992, at * 12 (II) (D) (N. D. Ga. Mar. 30, 2012) (ruling that neither HAMP nor EESA vest mortgagors with third party beneficiary rights to enforce HAMP agreements under state law); *Hall*, supra, 2011 U. S. Dist. LEXIS 104615, at * 8-9

---

[1] We note that the majority of other federal courts have likewise held that borrowers are not third-party beneficiaries under HAMP. See *Edwards v. Aurora Loan Svcs., LLC*, 791 F. Supp. 2d 144, 152 (IV) (C) (1) (D. C. Cir. 2011) (citing cases which hold that borrowers do not have standing to enforce the terms of HAMP SPAs as third-party beneficiaries); *Rivera v. Bank of America Home Loans*, No. 09 cv 2450 (LB), 2011 U. S. Dist. LEXIS 43138, at * 18 (II) (B) (E. D. NY Apr. 21, 2011) (citing a lengthy list of cases and noting the "[w]ith very few exceptions, almost all federal courts [that] have addressed this precise issue have rejected borrowers' claims to enforce the [SPAs] as third[-]party beneficiaries.") (citations and punctuation omitted).

(III) (a) (ii) (applying Georgia law and ruling that HAMP does not convey third party beneficiary status to homeowners); *Warren*, supra, 2011 U.S. Dist. LEXIS 55777, at * 6-9 (III) (A) (1) (applying Georgia law and ruling that homeowners are mere incidental beneficiaries who lack standing to enforce the HAMP Agreements on a breach of contract theory).

Moreover, in enacting EESA and HAMP, the legislature gave the Secretary of the Treasury the right to initiate a cause of action under the Administrative Procedure Act, 12 U. S. C.§ 5229 (a) (1). See *Miller*, supra, 677 F.3d at 1116 (III); *Warren*, supra, 2011 U. S. Dist. LEXIS 55777, at *11 (III) (A) (2) ("Legislative history indicates that the right to initiate a cause of action [under HAMP] lies with the Secretary via the Administrative Procedure Act.") (citation and punctuation omitted). In this regard, the Secretary of the Treasury has designated Freddie Mac as the compliance officer to ensure that the HAMP guidelines were followed by the loan servicer participants. *Miller*, supra, 677 F.3d at 1116 (III) ; see also *Warren*, supra, 2011 U. S. Dist. LEXIS 55777, at *8 (III) (A) (2) (recognizing that "Congress delegated enforcement authority to Freddie Mac.") (citations and punctuation omitted.) In light of this statutory scheme and provisions for administrative remedies, the federal courts in Georgia have consistently held that homeowners do not have a

private right of action to pursue alleged violations of HAMP.[2] See *Miller*, supra, 677 F.3d at 1116-1117 (III); see also *Finch*, supra, 2012 U. S. Dist. LEXIS 49294, at \*4-6 (dismissing borrower's claim for a HAMP loan modification since "[t]he Eleventh Circuit has explicitly held that nothing express or implied in HAMP gives borrowers a private right to action.") (citations and punctuation omitted); *Kabir v. Statebridge Co., LLC*, No. 1:11-cv-2747-WSD, 2011 U. S. Dist. LEXIS 109778, at \* 27-28 (II) (B) (6) (N. D. Ga. Sept. 27, 2011) (noting that other federal courts have likewise found that HAMP and EESA do not expressly or impliedly create a cause of action to borrowers for enforcement of HAMP agreements); *Hall*, supra, 2011 U. S. Dist. LEXIS 104615, at \*5-7 (III) (a) (i) (ruling that there is no private cause of action under HAMP, and expressing that the legislative scheme would not be furthered by an implied private right of action since such would expose servicers to significant litigation expenses and discourage servicers from participating in the program);

---

[2] Based upon the EESA provisions and the HAMP guidelines, homeowners are not without recourse in challenging a HAMP participant's non-compliance with HAMP's obligations. A homeowner may report alleged instances of non-compliance to Freddie Mac, which is charged with the duty to conduct compliance assessments, or to the Secretary of the Treasury, who may initiate a cause of action. See, e.g., 12 U. S. C.§ 5229 (a) (1); *Miller*, supra, 677 F.3d at 1116 (III); *Warren*, supra, 2011 U. S. Dist. LEXIS 55777, at \*8 (III) (A) (2).

*Warren*, supra, 2011 U. S. Dist. LEXIS 55777, at *8-12 (III) (A) (2) (ruling that there is no express or implied cause of action to homeowners under HAMP).

We find that the aforementioned federal court decisions are highly persuasive. As an initial matter, "[f]ederal law controls the interpretation of contracts where the United States is a party to the contract." (Citations and punctuation omitted.) *Rivera v. Bank of America Home Loans*, No. 09 CV 2450 (LB), 2011 U. S. Dist. LEXIS 43138, at * 11 (II) (E. D. NY Apr. 21, 2011). Moreover, in resolving the third-party beneficiary issue, the federal courts have correctly applied Georgia state law and have properly concluded that HAMP was not intended to create a right of enforcement by homeowners as third-party beneficiaries. See *Finch*, supra, 2012 U. S. Dist. LEXIS 49294, at *4-5; *Hall*, supra, 2011 U. S. Dist. LEXIS 104615, at * 8-9 (III) (a) (ii); *Warren*, supra, 2011 U.S. Dist. LEXIS 55777, at * 6-8 (III) (A) (1). Since Phillips did not have a private right of action to enforce HAMP against U. S. Bank, his third-party breach of contract claim should have been dismissed.

2. *Breach of the Implied Covenant of Good Faith and Fair Dealing.* U. S. Bank also argues that Phillips can not circumvent his lack of a private right of action by alleging a breach of the implied covenant of good faith and fair dealing. Again, we agree that Phillips's claim fails as a matter of law.

It is true that

> [e]very contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. The implied covenant modifies and becomes a part of the provisions of the contract, *but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability.*

(Citations and punctuation omitted; emphasis supplied.) *Myung Sung Presbyterian Church, Inc. v. North American Assn. &c. Ministries*, 291 Ga. App. 808, 810 (2) (662 SE2d 745) (2008); see also *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 468 (2) (610 SE2d 352) (2005). Here, Phillips alleged that U. S. Bank breached an implied covenant of good faith and fair dealing by failing to properly determine his eligibility for a HAMP loan modification. Phillips has not set forth any breach of contract claim that was independent of U. S. Bank's obligations under HAMP. As stated in Division 1 above, Phillips's breach of contract claim under HAMP was not a viable cause of action. It thus follows that Phillips could not maintain a claim for breach of the covenant as an independent basis for liability. See *Miller*, supra, 677 F.3d at 1117 (III) (applying Georgia law and ruling that a borrower lacked standing to pursue his claim for breach of an implied duty of good faith and fair dealing, which was premised upon his non-viable claim regarding the bank's HAMP obligations);

11

*Edwards v. Aurora Loan Svcs., LLC*, 791 F. Supp. 2d 144, 152 (IV) (C) (2) (D. C. Cir. 2011) (dismissing the borrowers' claim for breach of the covenant of good faith and fair dealing premised upon a HAMP violation since the borrowers were neither parties to the SPA nor intended beneficiaries thereunder). The trial court's failure to dismiss this claim was erroneous.

3. *Negligent Implementation of HAMP.* U. S. Bank argues that Phillips's claim for negligent implementation of HAMP also fails as a matter of law.

"[I]t is well settled that violating statutes and regulations does not automatically give rise to a civil cause of action by an individual claiming to have been injured from a violation thereof." (Punctuation and footnote omitted.) *Govea v. City of Norcross*, 271 Ga. App. 36, 41 (1) (608 SE2d 677) (2004). As explained in Division 1 above, the statutory scheme and provisions of HAMP do not provide a private cause of action for homeowners. The exclusive regulatory remedy is vested in the Secretary of the Treasury and Freddie Mac. Consequently, Phillips can not recover damages based upon this negligence claim. Cf. id.

Phillips nevertheless points to OCGA § 51-1-6 in support of his claim that Georgia law authorizes a negligence claim notwithstanding the fact that no cause of action is given in express terms. OCGA § 51-1-6 provides that "[w]hen the law

requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." This statutory provision does not apply here.

While homeowners incidentally benefit from HAMP's incentives, homeowners are not intended third-party beneficiaries to whom servicers owe a legal duty under HAMP. See *Miller*, supra, 677 F.3d at 1116 (III); see also *Hall*, supra, 2011 U. S. Dist. LEXIS 104615, at * 6-7 (III) (a) (i). Compare *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257, 259 (1) (a) (724 SE2d 1) (2012) (where the plain language of the Gramm-Leach-Bliley Act stated that financial institutions have a legal duty to protect certain information for their customers). The provisions of HAMP do not plainly impose a legal duty intended to benefit homeowners, so as to authorize a private negligence cause of action. See *Miller*, supra, 677 F.3d at 1116 (III); *Warren*, supra, 2011 U. S. Dist. LEXIS 55777, at *8 (III) (A) (2). Dismissal of Phillips's negligence claim under HAMP was therefore required.

4. *Wrongful Attempted Foreclosure.* U. S. Bank also challenges the trial court's failure to dismiss Phillips's wrongful attempted foreclosure. Phillips's wrongful attempted foreclosure claim sought an injunction to prevent U. S. Bank from

proceeding with a foreclosure of his residence. As the basis for his claim, Phillips alleged that U. S. Bank was not the true holder of the note and security deed, and therefore, it lacked the requisite authority to institute foreclosure proceedings.

Notably, Phillips's claim appears to raise the same question posed in *You v. JPMorgan Chase Bank, N.A.*, No. 1:12-cv-202-JEC-AJB, 2012 U.S. Dist. LEXIS 127461, at * 17 (III) (C) (N.D. Ga. Sept. 7, 2012), inquiring "whether a [security] deed holder who does not also hold the note, or have an interest in the underlying debt obligation, can validly institute foreclosure proceedings." Recognizing that there are no clear controlling precedents deciding this issue, the federal court certified the question to the Georgia Supreme Court. Id. The Georgia Supreme Court's decision in *You v. JPMorgan Chase Bank, N.A.*, (Case No. S13Q0040, docketed Sept. 13, 2012) will be dispositive of the question of whether Phillips's complaint asserts a viable claim for relief against U. S. Bank. Accordingly, the trial court's order as to the wrongful attempted foreclosure claim is vacated and this case is remanded. Any further proceedings in this matter should be stayed until the Georgia Supreme Court has rendered its decision in *You*, supra.

*Judgment reversed in part; vacated in part; and case remanded with direction. Doyle, P.J., and Boggs, J., concur.*

14