# STATE OF MICHIGAN

# COURT OF APPEALS

FEDERAL NATIONAL MORTGAGE
ASSOCIATION,

UNPUBLISHED
January 20, 2015

Plaintiff-Appellee

v

No. 318345
Wayne Circuit Court
LC No. 12-013574-CZ

CHRISTINE AYRE,

Defendant-Appellant.

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

PER CURIAM.

Defendant, Christine Ayre ("Ayre"), appeals by right the order of the circuit court granting plaintiff, Federal National Mortgage Association ("Fannie Mae")'s motion for summary disposition and dismissing her counterclaim. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On April 27, 2007, Ayre obtained a mortgage loan from Shore Mortgage to finance the purchase of real property located in Dearborn, Michigan ("the property"). As security for the loan, Ayre granted a mortgage on the property to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee; MERS assigned the mortgage to BAC Home Loans Servicing, L.P. f/k/a Countrywide Home Loans Servicing L.P. ("Countrywide") on February 22, 2011. Countrywide subsequently merged with Bank of America, N.A., which became the servicer of the loan.

Ayre defaulted on the mortgage. Bank of America initiated foreclosure by advertisement proceedings. Fannie Mae purchased the property at a foreclosure sale on April 28, 2011. The redemption period expired on October 28, 2011. Ayre did not redeem the property during the redemption period.

On February 2, 2012, Fannie Mae filed suit against Ayre in the district court seeking to evict Ayre from the property. Ayre answered and filed a counterclaim to set aside the foreclosure and sheriff's sale, alleging fraudulent inducement and misrepresentation, promissory estoppel, violation of due process, violation of contractual obligations, and wrongful foreclosure. The parties stipulated to the severance of Ayre's counterclaim and its removal to the circuit court. Fannie Mae moved the circuit court for summary disposition pursuant to MCR 2.116(C)(7) and (8), arguing, *inter alia*, that Ayre's claims were barred by the statute of

-1-

frauds and that Ayre had failed to plead fraud with particularity. The circuit court held oral argument on June 14, 2013. On July 15, 2013, the circuit court issued a written opinion and order granting Fannie Mae's motion and dismissing Ayre's counterclaim.[1] The circuit court denied Ayre's motion for reconsideration on September 6, 2013. This appeal followed. On appeal, Ayre does not challenge the circuit court's dismissal of Count II (promissory estoppel), Count III (violation of due process), or Count VI (exemplary damages)[2] of her counterclaim. Ayre challenges only the circuit court's dismissal of Count I (fraudulent inducement and misrepresentation), Count IV (violation of contractual obligation to modify Ayre's loan), and Count V (wrongful foreclosure).

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition. See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817. Where such a motion is brought under MCR 2.116(C)(7) (complaint barred by the statute of frauds), a party may support the motion by "affidavits, depositions, admissions, or other documentary evidence;" if such evidence is submitted, the trial court must consider it. *Maiden*, 461 Mich at 119; MCR 2.116(G)(5). "The contents of the complaint are accepted as true unless contradicted by documentation submitted by the movant." *Id*. A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. *Id*. "All well-pleaded factual allegations are accepted as true and construed in the light most favorable to the nonmovant." *Id*. Summary disposition may be granted pursuant to MCR 2.116(C)(8) only "where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted). In considering a motion for summary disposition under this subrule, a trial court considers only the pleadings. *Id*. at 120.

This Court reviews de novo issues of statutory interpretation. *Ardt v Titan Ins Co*, 233 Mich App 685, 690; 593 NW2d 215 (1999). This Court also reviews de novo the applicability of equitable doctrines. *Knight v Northpointe Bank*, 300 Mich App 109, 113; 832 NW2d 439 (2013).

## III. FRAUDULENT INDUCEMENT AND MISREPRESENTATION

Ayre alleged in Count I of her counterclaim that Fannie Mae made several misrepresentations "by and through its predecessor servicer Bank of America." Specifically, Ayre alleged that Fannie Mae had made material misrepresentations regarding whether the mortgage would be reviewed by Bank of America for potential modification, that Fannie Mae

---

[1] The circuit court did not address under which subrule it was granting summary disposition; however, it made no reference in its opinion to the statute of frauds, and thus presumably analyzed Ayre's claim pursuant to MCR 2.116(C)(8). As discussed below, we hold that Ayre failed to state a claim for which relief could be granted and thus affirm the circuit court under MCR 2.116(C)(8).

[2] As Ayre acknowledged at the motion hearing, the "claim" for exemplary damages is not an independent claim, but rather a request for additional damages.

intended that Ayre would rely on these representations, that Fannie Mae knew these representations were false or acted in reckless disregard of their truth or falsity, that Ayre relied on these representations, and that such reliance was detrimental.

The circuit court, while not addressing Ayre's fraud claims by name, held that Ayre had not cited any statutory provision providing "that a mortgage holder or servicer cannot foreclose on the mortgage during the modification process when the borrower is being considered for eligibility," nor had Ayre cited any provision stating "that a mortgage holder must provide a denial letter to the Borrower prior to foreclosing on the property."

To establish a claim for fraudulent misrepresentation or fraud in the inducement, a party must plead and establish the following elements:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage. [*M & D, Inc v W.B. McConkey*, 231 Mich App 22, 27; 583 NW2d 33 (1998).]

Fraudulent misrepresentation involves a misrepresentation of a past or existing fact, whereas fraud in the inducement occurs when a party materially misrepresents future conduct. *Samuel D. Begola Services, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). The elements of fraud must be pled with particularity. MCR 2.112(B); *Cooper v Auto Club Ins Ass'n*, 481 Mich 399, 414; 751 NW2d 443 (2008).

Here, Ayre's pleading does not allege that *Fannie Mae* made or communicated any material representations, whether of past, present, or future facts, but merely asserts that Fannie Mae acted "through its predecessor servicer" in making the representation that Ayre's loan was under review for potential modification. Ayre did not even plead the existence of an agency relationship between Fannie Mae and Bank of America that would compel the conclusion that Fannie Mae was liable for any misrepresentations made by Bank of America. Even on appeal, Ayre merely cites general agency principles followed by the conclusory statement that Fannie Mae had an agency relationship with Bank of America. Ayre did attach a copy of an agreement between Fannie Mae and Countrywide indicating that Fannie Mae had committed to purchase the mortgage from Countrywide pursuant to the federal Home Affordable Modification Program (HAMP), and additionally provided the circuit court with a document from MERS indicating that Fannie Mae was the investor on Ayre's loan; however, nothing in Ayre's pleading indicates that these documents formed the basis of an agency relationship such that the actions of Bank of America could be imputed to Fannie Mae. Even taking Ayre's allegations as true and drawing inferences in her favor, we cannot conclude that Ayre pleaded the elements of an agency relationship. See *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992).

Further, Ayre has not established that the claimed representation, i.e. that her loan was under review, was in fact false. As the circuit court pointed out, Ayre can point to no authority requiring a mortgage holder or servicer to inform a borrower that a request for modification had been denied prior to initiating foreclosure proceedings. Finally, even assuming that the

representation was false and could be imputed to Fannie Mae, Ayre did not plead with particularity exactly how her reliance on this misrepresentation was detrimental, for example by pleading any actions she might have taken had she not received this representation. Ayre was aware of her obligations under the mortgage and aware that she was in default.

General allegations or mere speculation are insufficient to properly plead a claim for fraud. *LaMothe v Auto Club Ins Ass'n*, 214 Mich App 577, 586; 543 NW2d 42 (1995).[3] Ayre thus did not successfully state a claim for which relief could be granted, and summary disposition was proper under MCR 2.116(C)(8).[4]

## III. VIOLATION OF HAMP

Ayre alleged in Count IV of her counterclaim that Fannie Mae, through its predecessor servicer, had violated its contractual obligations under the federal Home Affordable Modification Plan (HAMP), 12 USC § § 5201-5253.[5] Even if Fannie Mae's conduct was contrary to HAMP, Ayre possesses no private right of action to enforce the program. See *Miller v Chase Home Finance, LLC*, 677 F3d 1113, 116-1117(CA 11, 2012); *Hart v Countrywide Home Loans, Inc.*, 735 F Supp 2d 741, 748 (ED Mich, 2010). Rather, the federal government has directed the Federal Home Loan Mortgage Corporation to conduct compliance assessments of HAMP participants. *Miller*, 677 F3d at 1116. The circuit court correctly concluded that Ayre "simply has no right to sue under HAMP."

---

[3] Ayre appeared to argue before the circuit court that a claim for fraud in the inducement need not be pleaded with particularity. To the extent Ayre presses that argument on appeal, this Court has found no authority for the proposition that fraud in the inducement should be carved out from the requirements of MCR 2.112(B).

[4] Although the parties discuss the statute of frauds, we need not decide whether it applies to Ayre's fraud claim. We do note that MCL 566.132(2) provides in relevant part that "an action shall not be brought against a financial institution *to enforce any of the following promises . . .*" unless they are in writing. (emphasis added). Here, Ayre argues that Fannie Mae made false statements of fact (that her loan was being reviewed for modification) and seeks to have her foreclosure set aside, and does not expressly seek enforcement of any alleged promise by Fannie Mae. Cf. *Crown Technology Park v D & N Bank, FSB*, 242 Mich App 538, 550; 619 NW2d 66 (2000) (stating that a party is precluded from bringing a claim "against a financial institution to enforce the terms of an oral promise to waive a loan provision."). The circuit court did not rely on the statute of frauds in making its decision. Nor do we rely on it in affirming the circuit court.

[5] HAMP is a federal program administered by the United States Department of Treasury to "provide deep and meaningful savings for homeowners devastated by unaffordable increases in expenses or reductions in income." See generally http://www.makinghomeaffordable.gov/programs/lower-payments/Pages/hamp.aspx (last accessed December 17, 2014). HAMP allows loan servicers to implement trial period plans (TPPs) to modify a borrower's loan in an effort to reach an affordable ratio of payment to income. See *id*.

## IV. WRONGFUL FORECLOSURE

Ayre alleged in Count V of her counterclaim that Bank of America lacked the capacity to foreclose on the property due to "loan servicing violations and fraudulent assignment from MERS." To the extent that Ayre's reference to "loan servicing violations" incorporates her arguments relating to her fraud claims, such arguments are addressed above and do not in any event relate to a defect in the foreclosure process itself. However, Ayre also argues that her loan was "allegedly assigned by MERS to [Countrywide], yet the signature and the notarization of the assignment are suspect were [sic] not even completed on the same day, let alone in the presence of a valid notary public."

" 'The Michigan Supreme Court has held that it would require a strong case of fraud or irregularity, or some peculiar exigency, to warrant setting a foreclosure sale aside.' " *Sweet Air Inv v Kenney*, 275 Mich App 492, 497; 739 NW2d 656 (2007), quoting *United States v Garno*, 974 F Supp 628, 633 (E.D. Mich, 1997). Further, the mere presence of a defect in the foreclosure proceedings renders the foreclosure voidable, not void; to set aside the foreclosure a homeowner must demonstrate prejudice, i.e. "that they would have been in a better position to preserve their interest in the property absent defendant's noncompliance with the statute." *Kim v JPMorgan Chase Bank, N.A.*, 493 Mich 98, 114-115; 825 NW2d 239 (2012).

MCL 600.3204 governs foreclosure by advertisement. MCL 600.3204(3) provides that "[i]f the party foreclosing a mortgage by advertisement is not the original mortgagee, a record chain of title must exist before the date of sale . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." Ayre did not plead that such a recordation does not exist; but rather pleaded that the assignment was "fraudulent" and made reference to the assignment being notarized two days after it was signed. It does appear that there is an irregularity in the assignment documents, as the assignment itself is dated February 22, 2011 but the notarization block (as Ayre notes, on a separate page) is dated February 24, 2011. At the motion hearing, trial counsel stated that this discrepancy resulted from the documents being mailed to California to be signed and notarized.

The circuit court noted that, even if the defect in the assignment was of the type that would render the foreclosure voidable, "[Ayre] cannot show that she was prejudiced and that the sheriff's deed should be set aside." We agree. Ayre did not even plead prejudice, but rather stated in her counterclaim that the foreclosure should be declared void *ab initio*. Ayre's pleadings do not contain any allegations that she, for example, received inadequate notice of her default or of the foreclosure itself, yet Ayre made no effort to redeem the property or quiet title to the property until after the redemption period had run and eviction proceedings were started against her. See *Sweet Air*, 275 Mich App at 503. Under these circumstances, the circuit court correctly determined that Ayre did not properly state a claim for which relief could be granted.

## V. *MIK v FEDERAL HOME LOAN CORPORATION*

Lastly, Ayre raises a new argument on appeal: that a recent decision of the United States Court of Appeals for the Sixth Circuit, *Mik v Federal Home Loan Mortgage Corporation*, 743 F3d 149 (CA 6, 2014), provides that "noncompliance with federal regulations can be raised as a defense to eviction actions undertaken pursuant to a foreclosure" and "may be the basis of an affirmative, offensive state law claim."

This Court is not obligated to consider issues raised for the first time on appeal. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). Further, the *Mik* case did not address issues present in this case. Rather, it held that, although no federal cause of action exists for violations of the Protecting Tenants at Foreclosure Act of 2009 (PTFA), 12 USC § 5220, plaintiffs may use such violations to establish the elements of a state law cause of action. *Mik*, 743 F3d at 154.

Numerous problems exist with Ayre's reliance on *Mik*. First, this Court is not bound by decisions of lower federal courts, even in their interpretation of federal law. See *Abela v General Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004). Second, *Mik* involves an entirely different federal statute, of which Ayre never pleaded or alleged any violation by Fannie Mae. Further, although Ayre claims that she is entitled to raise Ayre's alleged HAMP violations as a defense to foreclosure and eviction in this case, the eviction case was severed from her counterclaim and is not before this Court. Finally, the *Mik* case was decided in the context of the district court's grant of the defendant's motion to dismiss:

> The district court properly held that the PTFA does not provide the Miks with a federal cause of action. However, it erred by construing their complaint as stating only claims based on the PTFA. The complaint alleges that the Miks "were wrongfully evicted," that Freddie Mac "deni[ed them] due process," and that Freddie Mac's actions "were outrageous and inflicted severe emotional distress upon the [Miks]." Therefore, we must consider whether relief may be granted with respect to these claims. [*Id*. at 160.]

The Sixth Circuit then went on to conclude that the Miks could pursue a claim for wrongful eviction (under Kentucky law) in the district court, because they alleged that "under the PTFA, they had a right to remain in the home after the foreclosure sale, that Freddie Mac did not allow them to stay for the duration of their lease, and that Freddie Mac evicted them without providing 90 day's notice." *Id*. at 168. The Sixth Circuit concluded that the district court had erred by failing to consider this claim out of a mistaken belief that violation of the PTFA could not support a state-law claim.

In sum, *Mik* stands for the unremarkable proposition that violations of federal law may under certain circumstances support a claim for violation of state law. See, e.g., *Wigod v Wells Fargo Bank, N.A.*, 673 F3d 547, 554 (7th Cir 2012). The proposition does not alter our conclusion that the circuit court correctly found that Ayre had failed to state a claim for which relief could be granted.

Affirmed.

/s/ Jane M. Beckering
/s/ Kathleen Jansen
/s/ Mark T. Boonstra