## IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

ERIK MOSEID, an individual, and
DIANNA MOSEID, an individual,

Appellants,

v.

U.S. BANK, N.A., a national banking
association, as trustee for SERIES
#2011-1 CERTIFICATES and successor
in interest to CREDIT SUISSE
FINANCIAL CORPORATION, a
business entity, form unknown, LAW
OFFICES OF KAREN L. GIBBON P.S.,
a business entity, form unknown, and
DOES 1 through 15, inclusive,

Respondents.

No. 70823-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: March 2, 2015

LEACH, J. — Representing themselves, Erik and Dianna Moseid appeal the trial court's summary dismissal of their complaint.[1] After unsuccessfully attempting to restrain a nonjudicial trustee's sale of their home in federal district court, the Moseids filed this postsale action in King County Superior Court against lender U.S. Bank, its servicer, Selene Finance LP,[2] and trustee Karen L.

---

[1] Pro se litigants are "bound by the same rules of procedure and substantive law as attorneys." Westberg v. All–Purpose Structures, Inc., 86 Wn. App. 405, 411, 936 P.2d 1175 (1997). We have "no obligation to grant special favors to . . . a pro se litigant." In re Marriage of Olson, 69 Wn. App. 621, 626, 850 P.2d 527 (1993).

[2] Selene Finance LP, which identifies itself as U.S. Bank's loan servicer and attorney-in-fact, is not listed in the case caption but is named extensively in the complaint.

Gibbon PS. They contend that foreclosure was wrongful and the sale invalid because the lender unfairly refused to modify their loan. On appeal, the Moseids claim that the trial court improperly denied them a chance to amend their complaint and erred by dismissing their complaint. But the Moseids never asked the trial court for permission to amend their complaint, and the complaint they filed does not state any claim for which the law provides a remedy. We affirm.

Background

In November 2006, Erik Moseid and Dianna Moseid financed the purchase of a home by signing a promissory note for $600,000, payable to Credit Suisse Financial Corporation, and a companion deed of trust. They fell behind in payments on the note due to economic hardships. In March 2011, the Moseids received a written notice of default.[3]

In June 2011, the loan servicer, Acqura Loan Services,[4] sent the Moseids a letter inviting them to contact its offices to learn more about a "specialized program" to refinance their loan. In August 2012, a new loan servicer, Selene Finance LP, similarly offered in a letter to "discuss your situation and help determine the best course of action for you." By this time, the Moseids had

---

[3] The second amended notice of trustee's sale refers to the initial notice of default, which is not a part of the record before this court. The Moseids do not dispute that they received proper notice of default or assert any other procedural irregularities in the nonjudicial foreclosure process.

[4] By this time, the original beneficiary, MERS (Mortgage Electronic Registration Systems Inc.), had assigned its beneficial interest in the deed of trust to U.S. Bank Trust, National Association, "whose address is c/o Acqura Loan Services."

missed more than two years of mortgage payments. The Moseids contacted Selene, which agreed to "perform research" in order to review their loan.

On October 25, 2012, successor trustee Karen L. Gibbon PS recorded a second amended notice of trustee's sale. This notice informed the Moseids that they had 20 days to pursue mediation and advised them to contact a housing counselor or attorney immediately for assistance in keeping their house. The letter described the amount in arrears. This included 33 months of mortgage payments, taxes, and fees and totaled $110,605.92. The notice also stated that the trustee's sale would occur on March 1, 2013, unless the Moseids cured the default on or before February 18, 2013. No evidence in the trial court record indicates that the Moseids pursued mediation or other foreclosure assistance. Nor does the record indicate that the Moseids attempted to cure their defaults before the sale.

On December 21, 2012, Selene sent the Moseids a letter requesting documents about income and hardship in order to "review [their] loan for a loan workout." The letter stated, "Please understand that there is no guarantee that your loan will be approved for a loan workout, but we will do everything we can to assist you."

On January 15, 2013, Selene sent the Moseids a letter denying their request for a loan modification due to insufficient income.

On February 28, 2013, the Moseids filed a lawsuit against Selene in federal district court and an ex parte motion for a temporary restraining order and

permanent injunction. The complaint alleged wrongful foreclosure, breach of contract, intentional infliction of emotional distress, slander of title, breach of fiduciary duty, breach of quasi-fiduciary duty, violation of the Fair Debt Collection Practices Act,[5] violation of the Fair Credit Reporting Act,[6] and violations of RESPA.[7] Finding that the Moseids were not likely to succeed on the merits and that "[w]ith the information available, there is no reason to believe the nonjudicial foreclosure is improper," the court denied the motion for a temporary restraining order. The court noted in its order that the Moseids gave no reason why they did not file their action sooner, given that they received the notice of foreclosure sale four months earlier, and also noted that they "have not demonstrated that effort was given to notify the Defendants of this TRO [temporary restraining order] motion."[8]

Selene asked the court to dismiss with prejudice under Fed. R. Civ. P. 12(b)(6). The Moseids did not respond to Selene's motion.

---

[5] 15 U.S.C. §§ 1692-1692p.

[6] Ch. 19.182 RCW.

[7] RESPA refers to the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601. This information about the Moseids' federal court claims comes from the district court's orders denying the Moseid's request for a temporary restraining order and granting Selene's motion to dismiss. The complaint the Moseids filed in federal district court was not among the materials considered by the superior court in the second lawsuit. Therefore, although Selene attaches this complaint as an appendix to its brief of respondent, we decline to consider it. See RAP 10.3(a)(8).

[8] The court observed that under Fed. R. Civ. P. 65(b), it may issue a temporary restraining order without notice to the opposing party only if "(A) specific facts in an affidavit or verified complaint clearly show immediate and irreparable injury and (B) the movant's attorney certifies in writing any efforts made to give notice and the reason why it should not be required."

On March 15, 2013, U.S. Bank purchased the property at the trustee's sale. On April 23, 2013, the district court dismissed the Moseids' complaint without prejudice.

On May 13, 2013, the Moseids filed this lawsuit against U.S. Bank and Law Offices of Karen L. Gibbon PS in King County Superior Court. They asked the court to set aside the trustee's sale and cancel the trustee's deed delivered to U.S. Bank. The Moseids also alleged damages from wrongful foreclosure and that U.S. Bank and Selene were estopped from denying reformation. Selene filed a motion to dismiss under CR 12(b)(6).

On July 19, 2013, the superior court heard oral argument on the motion to dismiss. On July 30, 2013, the court dismissed the Moseids' claims with prejudice.

The Moseids appeal.[9]

## Analysis

We review a trial court's ruling on a motion to dismiss under CR 12(b)(6) de novo, as a question of law.[10] A CR 12(b)(6) motion challenges the legal sufficiency of the allegations in a complaint.[11] A trial court properly dismisses

---

[9] The correspondence file for this court contains communications related to the appealability of the superior court's July 30, 2013, order. On December 11, 2013, a commissioner of this court entered a notation ruling stating that the trial court's order of dismissal is "an appealable order under RAP 2.2(a)(1) and/or (a)(3)."

[10] FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 180 Wn.2d 954, 962, 331 P.3d 29 (2014).

[11] Contreras v. Crown Zellerbach Corp., 88 Wn.2d 735, 742, 565 P.2d 1173 (1977).

under CR 12(b)(6) only when it appears beyond doubt that the claimant can prove no set of facts, consistent with the complaint, which would justify recovery.[12] We accept all facts alleged in the complaint as true, and we "'may consider hypothetical facts not included in the record.'"[13] But "[i]f a plaintiff's claim remains legally insufficient even under his or her proffered hypothetical facts," a trial court properly dismisses under CR 12(b)(6).[14]

If the trial court considers material outside the challenged pleading, it treats the CR 12(b)(6) motion as a summary judgment motion under CR 56.[15] We will affirm an order granting summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[16]

Here, Selene supported its motion to dismiss with a "request for judicial notice in support of motion to dismiss plaintiffs' complaint." It attached to this request the federal district court's order denying the Moseids' request for a temporary restraining order, the district court's order granting Selene's motion to dismiss, several assignments of the deed of trust, the second amended notice of trustee's sale, and the trustee's deed upon sale. The hearing record shows that the trial court considered these materials but does not indicate if the court took judicial notice of any of them.

---

[12] Tenore v. AT&T Wireless Servs., 136 Wn.2d 322, 329, 962 P.2d 104 (1998).
[13] Burton v. Lehman, 153 Wn.2d 416, 422, 103 P.3d 1230 (2005) (quoting Tenore, 136 Wn.2d at 330).
[14] Gorman v. Garlock, Inc., 155 Wn.2d 198, 215, 118 P.3d 311 (2005).
[15] CR 12(b)(6).
[16] CR 56(c).

The Washington deeds of trust act, chapter 61.24 RCW (DTA or Act), regulates transactions in which a borrower secures a promissory note or other debt instrument with a deed of trust.[17] The Act provides the requirements for nonjudicial foreclosure in the event of borrower default.[18] Courts construe the Act to further three basic objectives: an efficient and inexpensive nonjudicial foreclosure process, adequate opportunity to prevent wrongful foreclosure, and promotion of the stability of land titles.[19] Because the Act "dispenses with many protections commonly enjoyed by borrowers under judicial foreclosures, lenders must strictly comply with the statutes and courts must strictly construe the statutes in the borrower's favor."[20]

The DTA contains safeguards to ensure the fairness of nonjudicial foreclosure proceedings; for example, a trustee may begin the foreclosure process only after giving a borrower statutorily adequate notice and opportunity to cure.[21] A borrower who receives a notice of default may contest the default,[22] restrain the sale,[23] or contest the sale.[24] The DTA "sets forth the only means by

---

[17] Walker v. Quality Loan Serv. Corp., 176 Wn. App. 294, 305, 308 P.3d 716 (2013).

[18] RCW 61.24.030, .040, 090, .130.

[19] Cox v. Helenius, 103 Wn.2d 383, 387, 693 P.2d 683 (1985).

[20] Albice v. Premier Mortg. Servs. of Wash., Inc., 174 Wn.2d 560, 567, 276 P.3d 1277 (2012).

[21] RCW 61.24.030(8), .040(2).

[22] RCW 61.24.030(8)(j), 61.24.040(2).

[23] RCW 61.24.130.

[24] RCW 61.24.040(2); Cox, 103 Wn.2d at 387.

which a [borrower] may preclude a sale once foreclosure has begun with receipt of the notice of sale and foreclosure."[25]

First, the Moseids claim that the trial court should have given them a chance to amend their complaint. Under CR 15, a party may amend a pleading once "as a matter of course" any time before service of a responsive pleading and may amend later than that "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."[26] The rule provides the steps to follow "[i]f a party moves to amend a pleading."[27]

Here, the Moseids never moved to amend their complaint by either written motion or a request at oral argument. Although they assert in their reply brief that "Mr. Moseid did indicate to the trial court that amendment was possible," they do not support this claim with any citation to the record. This assertion may refer to paragraph 35 of their complaint, in which they state, "Plaintiffs will either seek leave to amend this Complaint to set forth the nature and amounts of damages when ascertained or, in the alternative, will amend this Complaint to conform to proof at trial." But this boilerplate cannot be read as a motion to amend. And the cases they cite[28] to argue that the court abused its discretion by "denying" leave to amend without giving its reasons do not support their position because the claimants in those cases moved to amend.[29] The Moseids made no

---

[25] Cox, 103 Wn.2d at 388.
[26] CR 15(a).
[27] CR 15(a).
[28] Wilson v. Horsley, 137 Wn.2d 500, 974 P.2d 316 (1999); Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 189 P.3d 168 (2008).
[29] Wilson, 137 Wn.2d at 502; Rodriguez, 144 Wn. App. at 729.

request to amend. The trial court could not abuse discretion it never was asked to exercise.[30] This claim fails.

The Moseids also contend that the court erred by granting Selene's 12(b)(6) motion "based on the so-called 'waiver' rule in RCW 61.24.040." RCW 61.24.040 describes the requirements for notice of a trustee's sale. A proper notice tells the recipient that an objector to a sale who does not bring an action to restrain the sale risks waiving any grounds to invalidate it:

> Anyone having any objection to the sale on any grounds whatsoever will be afforded an opportunity to be heard as to those objections if they bring a lawsuit to restrain the sale pursuant to RCW 61.24.130. Failure to bring such a lawsuit may result in a waiver of any proper grounds for invalidating the Trustee's sale.[31]

Courts have found waiver of a postsale action where a party (1) received notice of the right to enjoin the trustee's sale, (2) had actual or constructive knowledge of a defense to foreclosure before the sale, and (3) failed to bring an action to enjoin the sale.[32] Our Supreme Court has noted that "waiver is an equitable doctrine, and 'we apply waiver only where it is equitable under the circumstances and where it serves the goals of the act.'"[33] RCW 61.24.130(1) and (2) allow a borrower to move to restrain a trustee's sale "on any proper legal or equitable ground," provided he or she complies with certain procedural

---

[30] See also Wash. Coop. Chick Ass'n v. Jacobs, 42 Wn.2d 460, 466, 256 P.2d 294 (1953) (appellate court could not consider abuse of discretion claim because plaintiff did not ask trial court for leave to amend).

[31] RCW 61.24.040(1)(f)(IX).

[32] Plein v. Lackey, 149 Wn.2d 214, 227, 67 P.3d 1061 (2003); Steward v. Good, 51 Wn. App. 509, 515, 754 P.2d 150 (1988).

[33] Klem v. Wash. Mut. Bank, 176 Wn.2d 771, 783 n.7, 295 P.3d 1179 (2013) (quoting Albice, 174 Wn.2d at 570).

requirements. However, "bringing a suit objecting to the alleged default or to the foreclosure proceedings but without obtaining a restraining order does not prevent the sale from going forward."[34] And while parties may properly raise challenges to the foreclosure procedure itself in a postsale action, allowing a challenger to delay asserting a defense to default until after the sale would "'defeat the spirit and intent of the trust deed act.'"[35]

The Moseids contend that RCW 61.24.040 "doesn't apply because it requires an action to stay the trustee's sale be filed before the sale, and that's exactly what Appellants did here." But while the Moseids attempted to restrain the sale in federal district court, they did not "persuade the court of the merits of [their] defense."[36] Moreover, they did not comply with RCW 61.24.130(1) and (2), which require the applicant for a restraining order to give the trustee five days' notice of the attempt to seek the order and pay to the court clerk the sums then due on the obligation secured by the deed of trust. The court denied their request for a restraining order, and the sale went forward.

The Moseids did not, and do not now, contest the amount of default or the procedural correctness of the foreclosure proceedings. They argue that waiver does not apply but do not assert any of the statutory exceptions to waiver.[37] The

---

[34] Plein, 149 Wn.2d at 227 (citing 27 MARJORIE DICK ROMBAUER, WASHINGTON PRACTICE: CREDITORS' REMEDIES—DEBTORS' RELIEF § 3.61, at 202-04 (1998)).

[35] Steward, 51 Wn. App. at 516-17 (quoting Peoples Nat'l Bank of Wash. v. Ostrander, 6 Wn. App. 28, 32, 491 P.2d 1058 (1971)).

[36] RCW 61.24.040(2).

[37] RCW 61.24.127(1) makes exceptions to waiver for damages claims that assert fraud, violation of Title 19 RCW, failure of the trustee to materially comply

Moseids cite <u>Albice v. Premier Mortgage Services of Washington</u>[38] to argue that the trial court unfairly applied waiver to their situation. Unlike the plaintiffs in <u>Albice</u>, however, they do not show that they lacked adequate opportunity to seek presale remedies to prevent wrongful foreclosure.[39] The trial court equitably applied the waiver doctrine.

The Moseids also argue that the trial court erred "insofar as [its judgment was] based on claim preclusion doctrine." Claim preclusion, also known as res judicata, prohibits relitigating claims that were, or could have been, raised and litigated in an earlier action.[40] This doctrine precludes a subsequent claim where that action is identical with an earlier action in four respects: (1) persons and parties, (2) subject matter, (3) cause of action, and (4) quality of the persons for or against whom the claim is made.[41] Causes of action are the same for purposes of claim preclusion when (1) prosecution of the second action would destroy or impair rights or interests established in a prior judgment, (2) substantially the same evidence is involved in both actions, (3) the two suits involve infringement of the same rights, and (4) the two suits arise out of the "'same transactional nucleus of facts.'"[42]

---

with the terms of chapter 61.24 RCW, or violation of RCW 61.24.026 (pertaining to notice to senior beneficiary of sale).

[38] 174 Wn.2d 560, 276 P.3d 1277 (2012).

[39] See <u>Albice</u>, 174 Wn.2d at 570-71.

[40] <u>Loveridge v. Fred Meyer, Inc.</u>, 125 Wn.2d 759, 763, 887 P.2d 898 (1995).

[41] <u>Schoeman v. New York Life Ins. Co.</u>, 106 Wn.2d 855, 858, 726 P.2d 1 (1986).

[42] <u>Rains v. State</u>, 100 Wn.2d 660, 663-64, 674 P.2d 165 (1983) (quoting <u>Constantini v. Trans World Airlines</u>, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

Here, the trial court could not properly dismiss on the basis of claim preclusion. While the Moseids do not dispute that the parties are the same and the subject matter of both actions is the foreclosure of the loan secured by the deed of trust, the fact that the district court dismissed without prejudice means that the federal court action established no rights or interests that would be destroyed or impaired by prosecution of the state court action. Thus, the causes of action are not identical for purposes of claim preclusion.

Selene counters that the trial court could properly dismiss the Moseids' claims under the doctrine of collateral estoppel or issue preclusion. We disagree.

Collateral estoppel prohibits parties from relitigating issues in a subsequent proceeding, even when they assert different claims or causes of action.[43] A party asserting collateral estoppel must show that (1) the issues in both actions are identical; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) applying collateral estoppel does not work an injustice on the party precluded from bringing an action.[44]

The doctrine of collateral estoppel does not apply here. Washington courts follow federal law and treat a CR 12(b)(6) dismissal as a final judgment on

---

[43] Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 306, 96 P.3d 957 (2004) (quoting Rains, 100 Wn.2d at 665).
[44] World Wide Video of Wash., Inc. v. City of Spokane, 125 Wn. App. 289, 305, 103 P.3d 1265 (2005) (quoting Christensen, 152 Wn.2d at 307).

the merits and with prejudice, unless otherwise specified.[45] But here, the federal court dismissed the Moseids' complaint without prejudice. Therefore, contrary to Selene's assertion, the federal court order was not a final judgment on the merits. Selene's collateral estoppel argument fails.

Like the Moseids' waiver argument, however, the parties' arguments about claim preclusion and issue preclusion do not answer the question of whether the superior court erred in dismissing the Moseids' complaint under CR 12(b)(6). We conclude that even accepting the Moseids' allegations and additional hypothetical facts as true, they do not state a claim for which the law provides a remedy. The trial court properly dismissed the complaint.

The record does not support the Moseids' allegations that Selene "literally misled [them] into believing they would be fairly evaluated for a loan modification," only to "strong-arm[ ] the trustee's sale of their home without affording them any meaningful opportunity to mitigate loss and avoid foreclosure." Selene's letter specified that it offered no guarantee of a loan modification. And while the Moseids contend that the reason Selene gave for denying their request for modification was "specious and false," they allege no facts that support their bare assertion that their income was sufficient to support modified loan payments.

---

[45] In re Pers. Restraint of Metcalf, 92 Wn. App. 165, 175 n.6, 963 P.2d 911 (1998); see also McLean v. United States, 566 F.3d 391, 396 (4th Cir. 2009).

But even accepting the Moseids' assertion that Selene "failed and refused to consider [the Moseids] for any loan modification or default resolution program," chapter 61.24 RCW does not provide the remedy the Moseids requested—to set aside the trustee's sale. The Moseids do not dispute that they executed the deed of trust to secure repayment of their loan. Nor do they dispute the default amount alleged in the notice of trustee's sale. And they expressly state in their complaint that they do not base their suit on any failure of Selene to comply with the procedural requirements of chapter 61.24 RCW.

The Moseids' second cause of action, to cancel the trustee's deed upon sale, asserts that the deed is "invalid, void, and of no force or effect." The Moseids' recitation of facts about their pursuit of a loan modification, however, together with their admission that they allege no procedural violations of chapter 61.24 RCW, presents no set of facts justifying recovery for such a claim.

In their third cause of action, the Moseids allege "failures, refusals, and neglect in conducting the purported foreclosure sale." If these alleged failures refer to violations of the requirements of chapter 61.24 RCW, this contention contradicts the Moseids' statement that they do not allege procedural violations in conducting the sale. If the Moseids refer instead to their pursuit of a loan modification, they have again failed to state a claim for which the DTA provides a remedy.

Finally, in their fourth cause of action, the Moseids contend that Selene's actions "establish an agreement . . . to revise the loan arrangement" by "disputing

the existence of the agreement to revise while not expressly disclaiming it" and that Selene is estopped from denying this agreement. To the extent that the Moseids allege that Selene improperly denied them a loan modification under the federal Home Affordable Modification Program (HAMP),[46] their claim fails as a matter of law because courts have consistently held that HAMP does not create a private right of action.[47] And the Moseids' pleadings do not show any agreement or guarantee by Selene or any breach of good faith or fair dealing under RCW 61.24.160.

"When trustees strictly comply with their legal obligations under the act, interested parties will have no claim for postsale relief, thereby promoting stable land titles overall."[48] The Moseids do not dispute that the trustee here complied with its legal obligations under the DTA. They do not state any other claim for which the law provides a remedy. The trial court did not err in dismissing their complaint under CR 12(b)(6). To the extent that the trial court considered materials outside the pleadings, our conclusion under a summary judgment standard is the same. The Moseids have not raised any genuine issue of

---

[46] HAMP, which offers financial incentives to mortgage lenders to modify the home loans of borrowers in danger of foreclosure, was created under the Emergency Economic Stabilization Act of 2008. 12 U.S.C. § 5201; Citimortgage, Inc. v. Bermudez, ___ Ill. App. ___, 6 N.E.3d 268, 271 n.2, 379 Ill. Dec. 191 (2014).

[47] See, e.g., Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 555 (7th Cir. 2012); Miller v. Chase Home Fin., LLC, 677 F.3d 1113, 1116 (11th Cir. 2012); Brosius v. Wells Fargo Bank, N.A., 2014 WL 2199627, at *8 (E.D. Mich. 2014) (court order) (collecting cases).

[48] Albice, 174 Wn.2d at 572.

material fact, and the trial court did not err in granting Selene's motion to dismiss as a matter of law.

## Conclusion

Because the Moseids do not state a claim in their complaint for which the law provides a remedy or raise any genuine issue of material fact, the trial court did not err in dismissing their complaint under either CR 12(b)(6) or CR 56. We affirm.

_Leach, J._

WE CONCUR: