**SECOND DIVISION
BARNES, P. J.,
MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 8, 2013**

# In the Court of Appeals of Georgia

A13A0065. PULTE HOME v. SIMERLY et al.

MILLER, Judge.

Tim and Adele Simerly and Richard and Susan Trent sued Pulte Home Corporation ("Pulte"), raising claims of trespass, nuisance, negligence, negligence per se, riparian rights, unjust enrichment, and ejectment based on the company's actions in causing excess storm water and sediment to enter the Simerlys' and Trents' properties. Pulte filed third-party complaints against Sally and Dwayne Lawson and Ruth Benefield (collectively, the "Lawsons"), alleging that a bridge on the Lawsons' property was the cause of damage to the properties owned by the Simerlys and Trents. The Lawsons filed counter-claims against Pulte that were similar to the claims asserted by the Simerlys and Trents. The suits were consolidated and proceeded to a jury trial, where the jury found in favor of the Simerlys, Trents, and Lawsons

(collectively, the "Plaintiffs) and awarded them $2.49 million in damages and attorney fees. Pulte filed a motion for new trial following the entry of judgment, which the trial court denied. Pulte appeals, contending that the trial court erred in (1) denying Pulte's motion in limine to preclude Plaintiffs' counsel from testifying at trial; (2) failing to enforce the Georgia Rules of Professional Conduct requiring counsel to elicit only truthful evidence and failing to give a requested curative instruction following the presentation of false testimony; and (3) denying Pulte's motion in limine to preclude Plaintiffs from referencing Pulte's violations of the Clean Water Act ("CWA") and state statutes implementing the CWA. For the reasons that follow, we affirm.

Construed in favor of the verdict,[1] the evidence shows that in January 2004, Pulte purchased property in Forsyth County to develop single-family residences for what would become the Notting Hill and Fieldstone subdivisions ("Pulte Development"). The Pulte Development discharged water into Harris Creek and was located upstream of the Plaintiffs' properties. Pulte had purchased the property from Macauley Properties, which previously hired Lowe Engineering to complete a

---

[1] *Turner Broadcasting System, Inc. v. McDavid*, 303 Ga. App. 593, 593-594 (693 SE2d 873) (2010).

hydrology and storm water management study ("Lowe Study"). The Lowe Study was completed in January 2004, and Pulte relied upon the study to design and construct the Pulte Development. The Lowe Study recommended that storm water discharges from future developments could be controlled with the construction of a weir on Harris Creek, which consisted of a partial wall across the creek, above Drew Campground Road located within Fieldstone. The weir on Harris was constructed by Macauley Properties.

Pulte began mass grading and other land disturbing activities at Fieldstone in March 2004. Shortly thereafter, excessive amounts of storm water, dirt, sediment, and development debris were discharged into Harris Creek and ultimately into the ponds located on the Plaintiffs' properties. Investigations revealed that the discharged sediment and pollutants were caused by Pulte's activities upstream and its failure to install and maintain erosion control devices required by law. The Pulte Development also caused a dramatic increase in the rate and flow of storm water discharge into Harris Creek that caused flooding to the Plaintiffs' properties. During a subsequent study, it was discovered that the weir was inadequate to control the storm water discharge from the Pulte Development because the Lowe Study, upon which Pulte

3

had relied for storm water management, was based upon flawed assumptions and analysis.

1. Pulte contends that the trial court erred in denying its motion in limine to preclude the Simerlys' counsel from testifying at trial as to what occurred during a May 2009 document review. We disagree.

"In reviewing the denial of a motion in limine, this Court must construe the evidence most favorably to the upholding of the trial court's findings and judgment, and we cannot reverse a trial court's ruling absent an abuse of discretion." (Citations omitted.) *Hood v. State*, 291 Ga. App. 881, 882 (663 SE2d 297) (2008). "A motion in limine is properly granted when there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial." (Punctuation and footnote omitted.) *Hankla v. Jackson*, 305 Ga. App. 391, 392 (1) (699 SE2d 610) (2010).

During litigation, the trial court found that Pulte had engaged in spoilation by deleting emails relevant to the litigation, and enjoined Pulte from engaging in further destruction of evidence. The trial court had appointed a Special Discovery Master to oversee compliance with the court's injunction and to resolve other discovery issues, including the attempted recovery of spoilated evidence through a computer forensic investigation. The Special Discovery Master issued a report outlining that the

4

computer forensic investigation revealed that Pulte had engaged in further spoilation of electronic evidence after the trial court's order and recommended that Pulte be sanctioned for its violations. The trial court adopted the Special Discovery Master's report and recommendation.

The Special Discovery Master also informed the trial court that the Simerlys' counsel and Pulte's counsel had provided conflicting statements relating to Pulte's removal of discovery documents during a May 2009 document review at Pulte's offices. At a subsequent hearing before the trial court, Simerlys' counsel, Michael Carvalho, testified that he and an associate attorney, Christine Westberg, had a scheduled document review at Pulte's offices in May 2009. Carvalho testified that during the document review, he had stacked a number of documents in a pile that were deemed relevant in order to copy them. Before taking a break for lunch, Carvalho informed Pulte's counsel that they planned to copy the documents in the stack. When Carvalho returned from lunch, he noticed that the stack of documents was smaller. Carvalho testified that he asked Pulte's counsel about the missing documents, and she told him that she took the documents because they were privileged. Following the hearing, the trial court found that Pulte's counsel had taken documents during the document review.

About two weeks prior to trial, Pulte filed the instant motion in limine seeking to preclude the Plaintiffs from mentioning what transpired during the May 2009 document review. Pulte argued that any evidence with respect to the May 2009 document review would rely either on Carvalho's testimony, which was improper under Rule 3.7 (a) of the Rules of Professional Conduct, or the trial court's order, which would amount to an impermissible comment on the evidence. The trial court denied Pulte's motion in limine and allowed Carvalho to testify about spoliation during the May 2009 document review, finding that forcing him to withdraw at the late stage of the proceedings would cause a substantial hardship to the Simerlys and would allow Pulte to benefit from its discovery violations.

Under these circumstances, we cannot say that the trial court abused its discretion in denying Pulte's motion in limine. Notably, while Rule 3.7 (a) of the Rules of Professional Conduct of Georgia provides that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," Rule 3.7 (a) specifically provides an exception where the testimony relates to the nature and value of legal services rendered in the case. Georgia Rules of Professional Conduct 3.7 (a) (2). In this case, the Plaintiffs sought expenses of litigation and attorney fees under OCGA § 13-6-11 for stubborn litigiousness and unnecessary trouble and delay,

and they argued that Carvalho's testimony regarding spoilation was relevant to this issue. At trial, the Plaintiffs elicited Carvalho's testimony about the May 2009 document review while he testified about the expenses of litigation and his attorney fees. If the documents removed by Pulte would show its liability, then the Plaintiffs were forced to undergo unnecessary trouble and expense to prosecute their claims in this case, and the evidence was properly admitted as it related to the issue of attorney fees. See *Kroger Co. v. Walters*, 319 Ga. App. 52, 57-58 (2) (a) (i) (735 SE2d 99) (2012) (affirming denial of motion in limine seeking to exclude evidence of spoilation because such evidence was relevant in jury's determination of whether plaintiff was entitled to attorney fees under OCGA § 13-6-11); see also *Citadel Corp. v. All-South Subcontractors*, 217 Ga. App. 736, 737 (1) (458 SE2d 711) (1995) (an award of attorney fees is unauthorized if a plaintiff fails to prove the actual costs of attorneys and the reasonableness of those costs).

Moreover, while Pulte's motion in limine did not specifically seek to disqualify Carvalho as counsel for the Simerlys, Rule 3.7 (a) also allows an attorney to testify at a trial where his disqualification would work substantial hardship on the client. Georgia Rules of Professional Conduct 3.7 (a) (3). Carvalho represented the Simerlys from the outset of the dispute with Pulte and was involved in the case for more than

7

three years before it went to trial. Based on Carvalho's substantial participation in the case, along with the fact that Pulte filed its motion in limine only weeks prior to trial, we cannot say that the trial court erred in concluding that disqualifying Carvalho would have worked a substantial hardship to the Simerlys. See *Schaff v. State*, 304 Ga. App. 638, 640 (697 SE2d 305) (2010) (the curtailment of an individual's right to counsel of choice is to be approached with great caution, and the trial court is vested with the discretion to determine whether to disqualify counsel). Accordingly, the trial court did not abuse its discretion in denying Pulte's motion in limine.

2. Pulte also argues that it was entitled to a new trial based upon the Plaintiffs' knowing elicitation of false testimony from their expert witness and the trial court's failure to provide a curative instruction. We disagree.

At trial, the Plaintiffs called a hydrology expert, Dr. Brian Wellington, to testify that Pulte's reliance upon the flawed Lowe Study was the cause of sedimentation and flooding on the Plaintiffs' properties. Dr. Wellington testified that he reviewed "the hydrology study that was done by Pulte's engineer for the site. Now the study was done by Lowe Engineer[s] in 2004." Although Macauley Properties, not Pulte, hired Lowe Engineers, Pulte did not object to Dr. Wellington's incorrect statement that Pulte commissioned the Lowe Study. Dr. Wellington further testified

that Pulte was required to put in a water detention structure prior to developing its properties, and that it had to design a structure to account for future growth and development. Dr. Wellington explained that Pulte assumed, through the Lowe Study, that the substantial majority of the property around the Pulte Development would remain undeveloped. Pulte failed to object when Plaintiffs' counsel asked whether Lowe Engineers designed the weir for Pulte or to Dr. Wellington's affirmative response. Without objection from Pulte, Dr. Wellington continued to testify about Pulte's flawed analysis and opined that the weir structure that Pulte *designed*, by way of the Lowe Study, was inadequate to control storm water discharge. Only later, when Plaintiffs' counsel asked Dr. Wellington about conclusions he drew from evaluating Pulte's analysis as performed by Lowe Engineering, did Pulte finally object to Plaintiffs' counsel's characterization of the question, arguing that counsel knew that Macauley Properties had commissioned the Lowe Study and installed the weir. The trial court sustained Pulte's objection, ordered Plaintiffs' counsel to rephrase the question, and denied Pulte's request for a curative instruction. Plaintiff's counsel asked Dr. Wellington whether the fact that Macauley Properties paid for the Lowe Study changed his analysis, and he testified in the negative.

On appeal, Pulte complains that Plaintiffs' counsel violated the rules of professional conduct by eliciting false testimony and failing to correct the false testimony given by Dr. Wellington when he stated that Pulte designed the weir. As shown above, Pulte made only one objection to the challenged testimony or to counsel's questioning that elicited such testimony, and this objection occurred after several misstatements that Pulte commissioned the Lowe Study and designed the weir. Consequently, even if the admission of Dr. Wellington's statements were in error, any error was harmless in light of Pulte's failure to object at the first instance of error. "Where a party fails to object to certain inadmissible evidence, but later objects to substantially the same evidence, the objection should be overruled because the failure to object the first time makes this harmless error." (Citations and punctuation omitted.) *Phelps v. Huff*, 214 Ga. App. 398, 402 (2) (a) (448 SE2d 64) (1994); see also *Bell v. Bell*, 210 Ga. 295, 296-297 (4) (79 SE2d 524) (1954) (there is no ground for reversal where challenged evidence was previously admitted without objection).[2] Furthermore, even after Pulte objected to the questioning that indicated

---

[2] Relying upon *Stolte v. Fagan*, 291 Ga. 477, 481 (2) (731 SE2d 653) (2012), Pulte argues that once the trial court sustained its objection, the trial court was required under OCGA § 9-10-185 to issue a curative instruction. Pulte's reliance upon *Stolte* or OCGA § 9-10-185 does not alter our analysis, because even under the statute, Pulte was still required to make a timely objection to counsel's statements that

10

that Pulte commissioned the Lowe Study, Dr. Wellington later made two additional statements that the weir was designed by Pulte, and Pulte did not object. "Even if counsel timely objects to certain testimony, its admission is not error where substantially the same evidence is subsequently admitted without objection." (Citation and punctuation omitted.) *Francois v. State*, 309 Ga. App. 692, 694 (1) (a) (711 SE2d 45) (2011). Therefore, we hold that the admission of the challenged testimony was harmless and does not require reversal.

3. Pulte also contends that the trial court erred in denying its motion in limine to preclude the Plaintiffs from presenting evidence that Pulte committed violations of the federal Clean Water Act ("CWA") because the CWA did not provide a private cause of action, a consent decree involving Pulte and several states – but not Georgia – shielded Pulte from additional liability, and the evidence was prejudicial as it urged

it believed were improper. See *Hamilton v. Shumpert*, 299 Ga. App. 137, 143-144 (3) (682 SE2d 159) (2009) (objections to counsel's improper statements under OCGA § 9-10-185 are waived unless they are made contemporaneously). "When, as here, no timely objection is interposed, the test for reversible error is whether the improper [comment] in reasonable probability changed the result of the trial." (Footnote omitted.) Id. at 144 (3). In light of counsel's clarifying comments that Pulte did not design the weir, Dr. Wellington's testimony that his opinions regarding the adequacy of the weir remained unchanged, and the undisputed evidence that Pulte relied upon the flawed design of the weir in its storm water management, Pulte cannot establish a reasonable probability that outcome of trial would have been different had counsel not stated that Pulte designed the weir.

11

the jury to punish Pulte even though the Plaintiffs could not directly sue for CWA violations. The trial court was vested with considerable discretion in ruling on Pulte's motion in limine, and we disagree with Pulte's contention that the trial court abused its discretion in this case.

First, the Plaintiffs did not assert a CWA claim directly. Rather, the Simerlys and the Trents alleged that Pulte violated their duty under the Georgia Water Quality Control Act ("GWQCA"), the Georgia Waste Control Act, the Georgia Erosion and Sedimentation Control Act ("Sedimentation Control Act"), and regulations issued under these statutes when it failed to abide by a permits issued by the State to discharge storm water. Similarly, the Lawsons alleged that Pulte's discharge of excessive amounts of storm water and sedimentation violated the above State statutes, along with the CWA.

The GWQCA (OCGA § 12-5-20 et seq.) is the State's statutory scheme implementing the CWA to regulate the discharge of pollutants into the waters of the State. See *Upper Chattahoochee Riverkeeper, Inc. v. Forsyth County*, 318 Ga. App. 499, 502-503 (1) (734 SE2d 242) (2012). Under the GWQCA, an entity seeking to erect a facility of any type that will result in the discharge of pollutants into the waters of the State is required to obtain a National Pollutant Discharge Elimination System

12

("NPDES") permit.[3] Id. at 503 (1); see also OCGA § 12-5-30. Generally, any discharge is unlawful unless performed pursuant to and in accordance with a NPDES permit. 33 U.S.C. §§ 1311 (a), 1342. Similarly, a discharge of storm-water runoff from construction activities where best management practices have not been properly implemented violates the Sedimentation Control Act. OCGA §§ 12-7-2, 12-7-6 (a).

It is well-settled that Georgia law allows the adoption of a statute or regulation as a standard of conduct so that its violation becomes negligence per se. See *Rockefeller v. Kaiser Foundation Health Plan of Ga.*, 251 Ga. App. 699, 702 (1) (554 SE2d 623) (2001); *Hubbard v. Dept. of Transp.*, 256 Ga. App. 342, 349-350 (3) (568 SE2d 559) (2002). "OCGA § 51-1-6 authorizes a plaintiff to recover damages for the breach of a legal duty even when that duty arises from a statute that does not provide a private cause of action. OCGA § 51-1-6 does not create a legal duty but defines a tort and authorizes damages when a legal duty is breached." (Citations and

---

[3] The regulated discharges include storm water runoff originating from sources such as residential developments. See *Coastal Marshlands Protection Committee v. Center for a Sustainable Coast*, 286 Ga. App. 518, 528-529 (2) (649 SE2d 619) (2007). The State of Georgia, through its Department of Natural Resources, Environmental Protection Division ("EPD"), has been delegated authority to issue NPDES permits in compliance with the applicable requirements of the CWA, the regulations issued thereunder, and applicable state law and state rules and regulations. See *Upper Chattahoochee Riverkeeper*, supra, 318 Ga. App. at 503 (1).

punctuation omitted.) *Jenkins v. Wachovia Bank, N.A.*, 314 Ga. App. 257, 259 (1) (a) (724 SE2d 1) (2012). Specifically, OCGA § 51-1-6 provides that "[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." The duties imposed by the GWCQA, Sedimentation Control Act, and the CWA fall within the ambit of OCGA § 51-1-6. See, e.g., *Jenkins*, supra, 314 Ga. App. at 259 (1) (a) (violations of federal statutes pertaining to financial institutions would support state negligence claim under OCGA § 51-1-6); *Dupree v. Keller Indus.*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991) (violation of federal OSHA regulations are admissible as evidence of and give cause of action under OCGA § 51-1-6); cf. *McLain v. Mariner Health Care*, 279 Ga. App. 410, 412-413 (2) (631 SE2d 435) (2006) (violations of federal statutes and regulations support claim of breach of legal duty in both traditional negligence and negligence per se actions). Under these circumstances, the Plaintiffs were allowed to present evidence regarding Pulte's noncompliance with the above statutes to establish their negligence per se claims.

14

Pulte nevertheless argues that the Plaintiffs could not maintain the instant lawsuit because CWA statutes governing private-citizen lawsuits require individuals to provide notice prior to filing suit and that there be an absence of any state or federal enforcement action.[4] However, the fact that the Plaintiffs' negligence per se claims were predicated upon violations of the CWA or the GWCQA, which implemented the CWA in this State, did not transform their such claims into CWA claims. Pulte has not cited authority, nor can we find any, that a plaintiff, who pursues a negligence per se action based on violations of the CWA or state statutes implementing the CWA, is subject to the CWA's requirements regarding private citizen lawsuits. Indeed, under OCGA § 51-1-6, the state and federal statutes merely provide the source of duty that is owed, but do not govern the right of action available or the course of the proceedings. See *Jenkins*, supra, 314 Ga. App. at 259 (1) (a) (although federal statute requiring financial institution to protect security and confidentiality of customers did not provide private right of action, statute established

_____

[4] "The CWA permits any private citizen who has an interest which is or may be adversely affected to sue to enforce any limitation established by a NPDES permit. [33 U.S.C.] § 1365 (a) and (g)." *Ailor v. City of Maynardville, Tenn.*, 368 F.3d 587, 590 (I) (A) (6th Cir. 2004). The CWA provides that a citizen suit may be brought only where there is an absence of federal or state enforcement proceedings and after the plaintiff has given proper notice to the EPA, to the state in which the violation occurs, and to the alleged violator. 33 U.S.C. § 1365 (b) (1).

15

duty to support state negligence claim under OCGA § 51-1-6); see also *Stephens County v. Wilbros, LLC*, Civ. A. No. 2:12-OCGA §-0201, 2012 WL 4888425 at *2-3 (N.D. Ga. Oct. 6, 2012) (plaintiff's state negligence per se claim based, in part, upon CWA and corresponding regulations did not morph claim into federal claim and were insufficient to authorize removal from state court).

Moreover, while Pulte argues that the Plaintiffs' claims were barred because it entered into a consent decree to resolve its violations of the CWA across the nation, the consent decree does not show that the Plaintiffs' claims were foreclosed. The consent decree relied upon by Pulte shows that it was the result of a lawsuit filed by the EPA and several states, not including Georgia. The consent decree binds the United States government, the state plaintiffs, and Pulte. Although the consent decree provides that the state plaintiffs – neither of which are defined to include Georgia or the Plaintiffs in this case – released their claims and promised not to sue for CWA violations at Pulte's development sites, including those at issue here, nowhere in the consent decree does it state that rights of third-party plaintiffs, such as the Plaintiffs in this case, would be subject to the provisions of the consent decree. Rather, the consent decree expressly states that it "does not limit the rights of third parties, not

16

party to this [c]onsent [d]ecree, against [Pulte]". Since the Plaintiffs were not party to the consent decree, it did not preclude them filing suit in this case.

We conclude that the evidence relating to Pulte's violations of the GWQCA and the Sedimentation Control Act was relevant to the Plaintiffs' negligence per se claims. Accordingly, the trial court did not err in denying Pulte's motion in limine to exclude this evidence. The verdict of the jury stands in this case.[5]

*Judgment affirmed. Barnes, P. J., and Ray, J., concur.*

---

[5] The Plaintiffs moved to strike Pulte's supplemental reply brief for being untimely filed. In light of our resolution of the claims presented, the motion is denied as moot.