DILLARD, Presiding Judge,
concurring fully and specially
I concur fully with the majority’s holdings in Divisions 1 and 2 that the 9-1-1 Act does not provide the Counties with a private right of action, explicitly or otherwise, to enforce its provisions against telephone-service providers such as the Defendants but that the 9-1-1 Act, read in conjunction with OCGA § 51-1-6,[14] provides the Counties with a potentially viable avenue for relief such that their complaints should not be dismissed at this early stage of the proceedings. Nevertheless, because litigants often seek to persuade this Court to recognize implied causes of action and to invoke OCGA § 51-1-6 as a way of circumventing a statute that does not authorize a litigant to *334 seek enforcement of its provisions, I write separately to provide further guidance as to the current state of Georgia law regarding these issues. Finally, as to Division 3, I disagree with the majority that it is premature to determine whether or not the type of charge imposed by the 9-1-1 Act is a tax or a fee because we have already expressly held, as a matter of law, that the 9-1-1 charge is indeed a tax, and the Defendants have not provided us with a compelling argument for revisiting that holding. That said, because I agree with the majority’s ultimate conclusion that the Counties’ complaints are sufficient to survive the motion to dismiss and that the case should be remanded for further proceedings, I concur in judgment only as to Division 3.
1. As to the trial court’s erroneous finding that the 9-1-1 Act provides an implied cause of action for the Counties to sue the Defendants to enforce its provisions, I write separately to emphasize that, even with regard to statutes enacted prior to the effective date of OCGA § 9-2-8,[15] Georgia law does not recognize implied causes of actions. In our state, a private right of action cannot be based solely on speculation regarding the “intent” of the General Assembly[16] when *335 there is no indication in the text of the statute itself that such a cause of action exists. Indeed, in determining whether a private right of action is authorized by a statute, “[t]he judicial task is ... to interpret the statute the General Assembly has passed to determine whether it displays an intent to create not just a private right of action but also a private remedy.”[17] And statutory “intent,” as reflected by the plain meaning of the relevant text, on this latter point is “determinative.”[18] Thus, it is entirely irrelevant that the trial court found it to be “implausible” that the General Assembly would enact the 9-1-1 statute without providing a cause of action against telephone-service providers to enforce its provisions because that is exactly what it did. Bottom line: In the absence of an explicit textual basis, “a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.”[19] As we have previously explained, “[i]t is wholly inappropriate, as well as constituting a clear violation of the separation of powers, for this Court to fashion causes of action out of whole cloth, regardless of any perceived public policy benefit.”[20]
Thus, I take this opportunity to reiterate that, so long as the meaning of the relevant statutory text is plain and does not lead to an *336 absurd result, that is the end of our inquiry.[21] Indeed, it is deeply troubling when
judges start discussing not the meaning of the statutes the legislature actually enacted, as determined from the text of those laws, but rather the unexpressed “spirit” or “reason” of the legislation, and the need to make sure the law does not cause “unreasonable consequences,” [thus venturing] into dangerously undemocratic, unfair, and impractical territory. The “spirit or reason” approach to statutory interpretation invites judges to read their own policy preferences into the law, as we all believe that our own policy views are wise and reasonable, which tempts us to assume, consciously or unconsciously, that the legislature could not have intended differently.[22]
As Georgians (and Americans), we are “governed by laws, not by the intentions of legislators.”[23] And as judges, we should only be concerned with what laws actually say, “not by what the people who drafted the laws intended.”[24] Suffice it to say, the trial court erred in disregarding these well-established principles and finding that the 9-1-1 Act provides an implied cause of action under the circumstances of this case.
2. I also fully concur with the majority’s holding that OCGA § 51-1-6 provides the Counties with a potentially viable cause of action to enforce the Defendants’ duties imposed by the 9-1-1 Act. Neverthe *337 less, because litigants routinely invoke OCGA § 51-1-6 in an attempt to enforce statutory provisions that do not give them the right to do so, I write separately to emphasize that the cause of action authorized by OCGA § 51-1-6 arises only in limited circumstances, and several requirements must be satisfied before a viable claim may be brought under the statute. As noted by the majority, OCGA § 51-1-6 provides that “[w]hen the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby.” But as we have repeatedly explained, the alleged duty cannot rest solely upon OCGA § 51-1-6 because that statute merely sets forth general principles of tort law.[25] Thus, the legal duty necessary to support a claim under OCGA § 51-1-6 “must be found in another legislative enactment[,]”[26] which in this case is the 9-1-1 Act.[27]
The Defendants have cited our Supreme Court’s decision in Wells Fargo Bank, N.A. v. Jenkins,[28] and this Court’s decisions in Parris v. State Farm Mutual Automobile Insurance Co.[29] and Best Jewelry *338 Mfg. Co. v. Reed Elsevier, Inc.,[30] to support their argument that, if the statute imposing the legal duty does not provide a plaintiff with a private right of action, neither does OCGA § 51-1-6. They contend that the Counties cannot bring a claim under OCGA § 51-1-6 for a violation of the 9-1-1 statute solely because the 9-1-1 statute does not authorize such a claim. But this argument misconstrues the holdings in the cases cited supra and conflicts with the plain language of OCGA § 51-1-6, which only applies when “no cause of action is given in [the underlying statute’s] express terms.” Furthermore, in Jenkins, the Supreme Court of Georgia held that an alleged violation of a federal statute did not give rise to a negligence claim under OCGA § 51-1-6 because the plaintiff did not show that there was a violation of any duty imposed by the federal statute, not because the federal statute did not provide the plaintiff with a cause of action to enforce its terms.[31] And in reaching this conclusion, the Jenkins Court emphasized that, “[i]n order for a plaintiff to invoke OCGA § 51-1-6, there must be the alleged breach of a legal duty with some ascertainable standard of conduct.”[32] As for Parris and Best Jewelry, the Defendants are simply mistaken that, despite the express language of OCGA § 51-1-6 providing otherwise, we nevertheless held in those cases that OCGA § 51-1-6 only authorizes claims when those claims are also authorized by the underlying statute imposing the relevant duty. While it is certainly true that some of the language employed in those cases is rather cursory and less than precise, it is likewise manifestly evident that OCGA § 51-1-6 may only be used to provide a cause of action to enforce a legal duty imposed by a different statute that does not otherwise authorize such an action itself. And, of course, plaintiffs have been allowed by Georgia courts to pursue claims under OCGA § 51-l-6underthoseexactcircumstancesinnumerouscases.[33]
But even though OCGA § 51-1-6 can provide a private right of action to enforce a duty imposed by a different statute, in order to *339 successfully assert a claim under OCGA § 51-1-6, the alleged duty arising from the other statute must be mandatory and imposed expressly by the statute at issue with specificity.[34] Not only that, the legal duty at issue must specifically impose “some ascertainable standard of conduct.”[35] And even if such a statutorily-mandated duty exists, a plaintiff cannot recover under OCGA § 51-1-6 unless the duty set forth in the other statute is expressly owed to the plaintiff, who must “fall[ ] within the class of persons it was intended to protect.”[36] Thus, the fact that a plaintiff might have some unintended or incidental benefit from the defendant’s compliance with a statutorily imposed duty is insufficient to support a claim under OCGA § 51-1-6.[37] Furthermore, even when the plaintiff is the intended beneficiary of such a duty, a successful claim under OCGA § 51-1-6 *340 requires that there has actually been a violation of that duty on the part of the defendant.[38]
In addition to satisfying the foregoing requirements, a plaintiff asserting a claim under OCGA § 51-1-6 must have suffered damages or harm resulting from the defendant’s violation of a legal duty owed to the plaintiff.[39] And plaintiffs must also show that “the harm complained of was the harm the statute was intended to guard against.”[40] Finally, as with any negligence claim, OCGA § 51-1-6 requires a causal connection between the defendant’s violation of a statutory duty and the injuries sustained by the plaintiff.[41]
In sum, to establish a negligence per se claim under OCGA § 51-1-6, a plaintiff must show that (1) the defendant violated a specific statutory duty, (2) the duty is mandatory and expressly imposed, (3) the plaintiff is in the class of persons that the statutory duty was intended to protect, (4) the plaintiff suffered the type of harm that the duty was intended to guard against, and (5) the defendant’s breach of that duty caused the plaintiff’s injuries. And here, it remains to be seen whether the Counties can present sufficient evidence to satisfy each of these requirements with respect to the Defendants’ alleged violations of the 9-1-1 Act. That said, at this stage in the proceedings, the allegations in the Counties’ complaints are at least sufficient to withstand a motion to dismiss. Nevertheless, litigants should be cautioned that the mere fact that a plaintiff is negatively impacted or harmed by a defendant’s violation of a statutorily imposed duty is *341 insufficient, in and of itself, to successfully plead and maintain a claim under OCGA § 51-1-6, and this is true regardless of how egregious the defendant’s conduct may be or how seemingly unfair it is to the plaintiff.
3. As previously mentioned, I concur with the majority’s ultimate conclusion that the Counties’ complaints are sufficient to withstand a motion to dismiss, and I agree that the case should be remanded for further proceedings consistent with this Court’s opinion. Nevertheless, I concur in judgment only as to Division 3 of the majority’s opinion because I do not agree with all that is said in reaching that conclusion. According to the majority, the trial court’s finding that the charge the Defendants are required to exact from their customers under the 9-1-1 Act is a fee, rather than a tax, is premature, and the parties, upon remand, should be allowed to present evidence to aid the court in deciding that issue. I respectfully disagree. This Court has already considered the charge exacted under the 9-1-1 Act and expressly held, as a matter of law, that the type of charge authorized by and imposed under the Act is a tax. And the trial court, which is bound by the decisions of this Court, erred in holding otherwise. But for the reasons set forth infra, the trial court’s error in this regard is irrelevant to our resolution of this appeal.
In Fulton County v. T-Mobile S., LLC,[42] this Court considered, as a matter of first impression, “whether the 9-1-1 charge authorized by the Act is properly classified as a ‘tax’ under Georgia law.”[43] In doing so, we relied on several Supreme Court of Georgia cases addressing whether payments made in other contexts were taxes or fees, decisions of other jurisdictions considering this issue with respect to their similar 9-1-1 statutes, and the provisions and stated purpose of the 9-1-1 Act itself.[44] And ultimately, without ever mentioning the manner in which the 9-1-1 charge had been imposed by Forsyth County in that particular case, we concluded that “the 9-1-1 charge is a tax.”[45] In reaching this conclusion, we did not reference any facts or evidence unique to the T-Mobile case, and we did not include any caveats or limiting language suggesting that, under different factual circumstances in another County, the type of charge that the Act imposed might not be a tax.[46]
Nevertheless the trial court attempted to distinguish T-Mobile by suggesting that the sole basis for our holding was that the *342 residents in Fulton County who paid the charge “receive no benefit not received by the general public because all members of the general public may access the 9-1-1 system.”[47] But the “public benefit” factor was only one of several factors that we considered in T-Mobile. For example, we evaluated whether the charge was voluntary and whether it was imposed to raise revenue for a public or governmental purpose.[48] And in considering whether the charge was for the benefit of the public, we relied on an extra-jurisdictional opinion addressing a similar 9-1-1 statute, which explained that the charge is not for the use of the 9-1-1 service like a payment for services rendered, but for access to the 9-1-1 system, regardless of whether or not a resident ever places an emergency call.[49] Thus, while there may be some additional benefits to a resident if he or she actually places an emergency call, the Counties have never alleged that their 9-1-1 systems are not accessible to the general public. Given the foregoing, the trial court’s finding that 9-1-1 charges are fees is foreclosed by binding precedent, and no further evidence is needed to resolve that issue.[50]
But unlike in T-Mobile, the issue of whether the 9-1-1 charge authorized by the Act is a tax is not the “dispositive issue in this case.”[51] Indeed, in T-Mobile, a telephone-service provider sought a tax refund from Forsyth County, and we held that it was authorized to do so under OCGA § 48-5-380, which applies to the overpayment of taxes to counties and municipalities.[52] And as noted by the majority, the Defendants contend that, if the 9-1-1 charge is a tax, the case must be dismissed because a common-law action for the recovery of taxes is impermissible. But here, the Counties are not suing a taxpayer for the recovery of taxes. Instead, they assert a statutory claim under OCGA § 51-1-6 for a violation of a legal duty, as well as *343 common-law claims to recover damages resulting from alleged negligence, fraud, and breach of fiduciary duty. But while none of these claims directly seek to collect unpaid taxes, “a party cannot survive a motion to dismiss merely by recasting alleged statutory or constitutional violations as torts.”[53] Thus, to the extent that any of the Counties’ common-law claims do nothing more than seek damages for a violation of the 9-1-1 Act, they must be dismissed.[54] The Counties’ claim under OCGA § 51-1-6, however, lives to fight another day
Decided June 15, 2017
Reconsideration denied July 12, 2017
Kilpatrick Townsend & Stockton, J. Henry Walker IV, John P. Jett, C. Allen Garrett, Jr.; Bondurant, Mixson & Elmore, Frank M. Lowrey IV, Amanda S. Bersinger, for appellants.
Barnes Law Group, Roy E. Barnes, John R. Beuis, W. Matthew Wilson; Evangelista Worley, James M. Evangelista, David J. Worley; Harris Lowry Mantón, Jeffrey R. Harris; Penn Law, Darren W. Penn, for appellees.
Pierson Law, Holly A. Pierson; Kasowitz, Benson, Torres & Friedman, Michael E. Hutchins, David E. Spalten, Jeremy D. Stall-man, amici curiae.
I am authorized to state that Judge Self joins this concurrence in Divisions 1 and 2.

 The trial court below and Defendants (on appeal) reference OCGA § 51-1-8 in passing, but their primary focus is on OCGA § 51-1-6 and its accompanying case law. Indeed, the Defendants cite only one case that even references OCGA § 51-1-8, and that opinion merely groups it with OCGA § 51-1-6 for the basic proposition that both statutes only authorize recovery of damages for the breach of a legal duty otherwise created. See Parris v. State Farm Mut.Auto. Ins. Co., 229 Ga.App. 522, 524 (494 SE2d 244) (1997). For these reasons, andbecause a claim brought under OCGA § 51-1-8 is separate and distinct from one brought under OCGA § 51-1-6, my analysis is limited to OCGA § 51-1-6.

 As noted by the majority, OCGA § 9-2-8 (a) provides that “[n]o private right of action shall arise from any Act enacted after July 1, 2010, unless such right is expressly provided therein.” (emphasis supplied). Subsection (b) of OCGA § 9-2-8 provides that
[njothing in subsection (a) of this Code section shall be construed to prevent the breach of any duty imposed by law from being used as the basis for a cause of action under any theory of recovery otherwise recognized by law, including, but not limited to, theories of recovery under the law of torts or contract or for breach of legal or private duties as set forth in Code Sections 51-1-6 and 51-1-8 or Title 13.

 In my view, our appellate courts should stop referencing altogether the ethereal fiction of “legislative intent” in the context of statutory interpretation. A judge should not care about what any legislator intended but did not expressly provide for in the statutory text. See King v. Burwell, _ U. S. _ (135 SCt 2480, 2505 (V), 192 LE2d 483) (2015) (Scalia, J., dissenting) (“More importantly, the Court forgets that ours is a government of laws and not of men. That means we are governed by the terms of our laws, not by the unenacted will of our lawmakers.”). If the General Assembly “enacted into law something different from what it intended, then it should amend the statute to conform to its intent.” Id. (punctuation omitted); accord Lamie v. United States Trustee, 540 U. S. 526, 542 (III) (124 SCt 1023, 157 LE2d 1024) (2004); see Malphurs v. State, 336 Ga. App. 867, 870-71 (785 SE2d 414) (2016) (Peterson, J.) (“The General Assembly does not enact a general intention; it enacts statutes. Statutes have words, and words have meanings. It is those meanings that we interpret and apply, not some amorphous general intention.”). And as for the notion that judges are somehow able to discern the collective intent of a legislative body, that is “[p]ure applesauce.” King, 135 SCt at 2501 (II) (Scalia, J., dissenting); see In re Whittle, 339 Ga. App. 83, 85-86 (1) (793 SE2d 123) (2016) (“[I]n the context of legislation, discerning ‘collective intent is pure fiction because dozens if not hundreds of legislators have their own subjective views on the minutiae of bills they are voting on—or perhaps no views at all because they are wholly unaware of the minutiae.’ ”)). Judges are not in the business of divining unexpressed legislative intent, nor are we capable of doing so with any reasonable degree of accuracy. As Judge Bethel (a former legislator) has aptly noted, “[a]ny attempt to discern legislative intent beyond the express language passed by a legislative body is as practical and productive as attempting to nail Jell-0 to the wall.” Bishop v. State, 341 Ga. *335 App. 590, 593 (802 SE2d 39) (2017) (Bethel, J., concurring). I agree. Judges are trained to interpret the meaning of the words expressly ratified by the people or enacted by their representatives in a manner consistent with longstanding canons of construction. Thus, when judges speak as if they are engaging in some mystical search for the legislature’s unexpressed intent (in the context of statutory interpretation), they create an impression that is both misleading and squarely at odds with the judicial duty. It is time to state plainly what is already manifestly true: What legislators intend but do not expressly provide for in the text of a statute is meaningless. I realize, of course, that OCGA § 1-3-1 (a) provides that “[i]n all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy,” but this statutory directive must be read in conjunction with OCGA § 1-3-1 (b), which provides that “[i]n all interpretations of statutes, the ordinary signification shall be applied to all words ....” In any event, the General Assembly can no more tell the judiciary how to generally interpret the law than we can direct them how to legislate. The separation of powers is essential to the maintenance of our constitutional republic, and it is high time that our discussion of statutory interpretation reflects the reality of our jurisprudence and acknowledges the strict demarcation line between judicial interpretation and legislating. We are judges, not black-robed philosophers.

 Somerville v. White, 337 Ga. App. 414, 416 (1) (787 SE2d 350) (2016) (punctuation omitted); accord Alexander v. Sandoval, 532 U. S. 275, 286 (II) (121 SCt 1511, 149 LE2d 517) (2001); see Gonzaga Univ. v. Doe, 536 U. S. 273, 283-84 (122 SCt 2268, 153 LE2d 309) (2002).

 Somerville, 337 Ga. App. at 416-17 (1); see Sandoval, 532 U. S. at 286 (II).

 Somerville, 337 Ga. App. at 417 (1) (punctuation omitted); see Sandoval, 532 U. S. at 286-87 (II).

 Somerville, 337 Ga. App. at 417 (1) (punctuation omitted) (quoting Schroeder v. Hamilton School Dist., 282 F3d 946, 951 (II) (7th Cir. 2002) (Manion, J.)); see also Steel Co. v. Citizens for a Better Env’t, 523 U. S. 83, 102 (IV) (118 SCt 1003, 140 LE2d 210) (1998) (holding that “the Constitution’s central mechanism of separation of powers depends largely upon common understanding of what activities are appropriate to legislatures, to executives, and to courts” (punctuation omitted)).

 See Shorter Coll. v. Baptist Convention of Ga., 279 Ga. 466, 470 (1) (614 SE2d 37) (2005); Ray v. Barber, 273 Ga. 856, 856 (1) (548 SE2d 283) (2001); see also City of Atlanta v. Miller, 256 Ga. App. 819, 820 (1) (569 SE2d 907) (2002) (“In construing a legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd or impracticable consequences, the court simply construes it according to its terms and conducts no further inquiry.” (punctuation omitted; emphasis supplied)); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 397 (1st ed. 2012) (“Intentionalist theorists and courts promote the idea that enacted texts merely evoke or suggest—as opposed to state—what the true law is If this were true, then it would hardly be possible ever to reach a consensus about the law. The traditional view is that an enacted text is itself the law.”); id. at 376 (“[T]hat the legislature even had a view on the matter at issue ... is pure fantasy. In the ordinary case, most legislators could not possibly have focused on the narrow point before the court [and] the few who did undoubtedly had varying views.”).

 Merritt v. State, 286 Ga. 650, 656 (690 SE2d 835) (2010) (punctuation omitted) (Nah-mias, J., concurring specially); accord Callaway Blue Springs, LLLP v. W. Basin Capital, LLC, 341 Ga. App. 535 (801 SE2d 325) (2017).

 Conroy v. Aniskoff, 507 U. S. 511, 519 (113 SCt 1562, 123 LE2d 229) (1993) (Scalia, J., concurring); accord Callaway Blue Springs, LLLP, 341 Ga.App. at 541 (1 ); Day v. Floyd Cty. Bd. of Educ., 333 Ga. App. 144, 151 (775 SE2d 622) (2015) (Dillard, J., concurring).

 Scalia & Garner, supra note 8, at 16; accord Callaway Blue Springs, LLLP, 341 Ga.App. at 541 (1); Day, 333 Ga.App. at 151 (Dillard, J., concurring).

 See Wells Fargo Bank, N.A. v. Jenkins, 293 Ga. 162, 164 (744 SE2d 686) (2013) (noting that a plaintiff cannot sue for the breach of an alleged duty based solely on OCGA § 51-1-6); Gobran Auto Sales, Inc. v. Bell, 335 Ga. App. 873, 877 (2) (783 SE2d 389) (2016) (explaining that OCGA § 51-1-6 “do[es] not create causes of action, but simply set[s] forth general principles of tort law, authorizing the recovery of damages for the breach of a legal duty otherwise arising, though not expressly stated, under a statute or common law” (punctuation omitted)); Parris, 229 Ga. App. at 524 (“OCGA § 51-1-6, standing alone, creates no cause of action. Rather, it simply authorizes the recovery of damages for the breach of a legal duty otherwise created.”); see also Pulte Home Corp. v. Simerly, 322 Ga. App. 699, 705 (3) (746 SE2d 173) (2013) (“OCGA § 51-1-6 does not create a legal duty but defines a tort and authorizes damages when a legal duty is breached.” (punctuation omitted)).

 Jenkins, 293 Ga. at 164; accord McConnell v. Dep’t of Labor, 331 Ga. App. 457, 459 (1) n.3 (787 SE2d 794) (2016).

 While OCGA § 51-1-6 “set[s] forth general principles of tort law,” Bell, 335 Ga. App. at 877 (2), OCGA § 51-1-6 claims are typically evaluated under the same legal framework as negligencepe/'se claims, which makes sensebecause such claims, like those under OCGA § 51-1-6, seek damages for the violation of a statute. See Goldstein, Garber & Salama, LLC v. J. B., 300 Ga. 840, 845 (2) (797 SE2d 87) (2017) (“[Njegligenceper se arises when a statute is violated, the person injured by the violation is within the class of persons the statute was intended to protect, and the harm complained of was the harm the statute was intended to guard against.” (punctuation omitted)); Brown v. Belinfante, 252 Ga. App. 856, 861 (1) (557 SE2d 399) (2001) (“In determining whether the violation of a statute or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.” (punctuation omitted)). Thus, OCGA § 51-1-6 does not necessarily authorize any type of tort claim merely because an alleged statutory violation satisfies its requirements.

 293 Ga. 162.

 229 Ga. App. 522.

 334 Ga. App. 826 (780 SE2d 689) (2015).

 See Jenkins, 293 Ga. at 164-165.

 Id. (emphasis supplied).

 See, e.g., Simerly, 322 Ga. App. at 705-06 (3) (holdingthat the plaintiffs’ claims regarding the defendant’s noncompliance with various federal and state statutes relating to environmental protection “[fell] within the ambit of OCGA § 51-1-6”); Combs v. Atlanta Auto Auction, Inc., 287 Ga. App. 9, 12 (2) (650 SE2d 709) (2007) (holding that a plaintiff could pursue a negligence claim under OCGA § 51-1-6 based on the defendant’s alleged violation of certain zoning ordinances); Ford v. Saint Francis Hosp., Inc., 227 Ga. App. 823, 827 (2) (490 SE2d 415) (1997) (affirming the trial court’s denial of a directed verdict in favor of the defendant on a negligence per se claim brought under OCGA § 51-1-6 based on a hospital’s noncompliance with federal regulations governing infection control).

 See Schaff v. Snapping Shoals Elec. Membership Corp., 330 Ga. App. 161, 164 (2) (767 SE2d 807) (2014) (holding that the plaintiff failed to describe the alleged statutory duties with enough specificity to support a negligencepe/'se claim brought under OCGA § 51-1-6); Hubbard v. Dep’t of Transp., 256 Ga.App. 342, 351 (3) (568 SE2d 559) (2002) (affirming partial summary judgment in favor of the defendant as to the plaintiff’s negligence claim asserted under OCGA § 51-1-6 because the statutory duties identified by the plaintiff were not mandatory).

 See Jenkins, 293 Ga. at 164.

 Norman v. Jones Lang LaSalle Americas, Inc., 277 Ga.App. 621, 628 (2) (b) (627 SE2d 382) (2006) (punctuationomitted); see Newman v. Johnson, 319 Ga.App. 307, 309 (1) (733 SE2d 520) (2012) (rejecting a claim based on OCGA § 51-1-6 when the plaintiff was not in the class of persons for whose benefit the statute from which the alleged duty arose was enacted); Jenkins v. Wachovia Bank, N.A., 309 Ga. App. 562, 566 (2) (711 SE2d 80) (2011) (holding that a plaintiff could not sue to enforce a check, which was allegedly paid by a bank “over a forged endorsement” when the bank’s alleged wrongful actions were not violations of any legal right of or duty owed to the plaintiff); R & R Insulation Servs., Inc. v. Royal Indem. Co., 307 Ga. App. 419, 424-25 (1) (705 SE2d 223) (2010) (noting that to recover under a theory of negligence per se under OCGA § 51-1-6, a plaintiff must show that he or she fell within the persons that the underlying statute was intended to protect); DaimlerChrysler Motors Co., LLC v. Clemente, 294 Ga. App. 38, 47 (2) (a) (668 SE2d 737) (2008) (holding that the plaintiff could not assert a claim under OCGA § 51-1-6 (or OCGA § 51-1-8) against a car dealership’s franchisor for a violation of the Georgia Motor Vehicle Franchise Practices Act when that Act regulated the relationship between automobile franchisors and their franchisee dealers and did not impose any legal duty upon automobile franchisors owed to the franchisee’s consumers)'. Benefit Support, Inc. v. Hall Cty., 281 Ga. App. 825, 832 (4) (637 SE2d 763) (2006) (holding, in the context of rejecting an OCGA § 51-1-6 claim, that the generic statement in OCGA § 33-23-5 (a) that it is “for the protection of the people of this state” does not expand the intent of the statute requiring licensure for counselors to benefit businesses that provide insurance (punctuation omitted)); Brantley v. Custom Sprinkler Sys., Inc., 218 Ga.App. 431, 432 (1) (461 SE2d 592) (1995) (holding that the defendant was entitled to summary judgment as to the plaintiff’s OCGA § 51-1-6 claim because plaintiff was not an employee of defendant, and “therefore was not [a] person intended tobebenefittedbythe.. .regulations upon which he relie [d]” in conjunction with OCGA § 51-1-6).

 See U. S. Bank, N.A. v. Phillips, 318 Ga.App. 819, 826 (3) (734 SE2d 799) (2012) (holding that OCGA § 51-1-6 did not apply to the plaintiff homeowner because, “[wjhile homeowners incidentally benefit from [the Home Affordable Modification Program (HAMP)]’s incentives, homeowners are not intended third-party beneficiaries to whom servicers owe a legal duty under HAMP”).

 See Rowell v. Phoebe Putney Meml. Hosp., Inc., 338 Ga. App. 603, 606-07 (2) (791 SE2d 183) (2016) (affirming grant of summary judgment because, although “[a] hospital has a legal duty to follow its existing bylaws and any alleged breach of that duty can be asserted asa cause of action under OCGA § 51 -1-6[,]" there was no evidence that hospital breached that duty); Simon Prop. Grp., Inc. v. Benson, 278 Ga. App. 277, 279 n.7, 281-82 (628 SE2d 697) (2006) (reversing the trial court’s order, which found that the plaintiff could sue to enforce a statute’s provisions under OCGA § 51-1-6, because there was no violation of the underlying statute).

 See Legacy Acad., Inc. v. Doles-Smith Enterprises, Inc., 337 Ga.App. 575, 583-84 (2) (789 SE2d 194) (2016) (holding that the plaintiffs “failed as a matter of law to establish any economic damages to support their claim for negligence under OCGA § 51-1-6, and thus the trial court should have granted the [defendants’] motions for directed verdict and j .n.o.v.” as to that claim); Sofet v. Roberts, 185 Ga. App. 451, 452 (2) (364 SE2d 595) (1987) (affirming the dismissal of a negligence claim brought under OCGA § 51-1-6 when the plaintiff did not allege that the defendant’s negligence caused him damage to his person or property); Hodges v. Tomberlin, 170 Ga. App. 842, 845 (3) (319 SE2d 11) (1984) (holding that the plaintiffs failed to state a right to recovery under OCGA § 51-1-6 when they suffered no damage as a result of the defendants’ conduct).

 Norman, 277 Ga. App. at 628 (2) (b) (punctuation omitted); accord Combs, 287 Ga. App. at 12 (2); Hubbard, 256 Ga. App. at 350 (3).

 See Norman, 277 Ga. App. at 628 (2) (b) (holding, in evaluating a claim brought under OCGA § 51-1-6, that “if the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury” (punctuation omitted)); Hubbard, 256 Ga. App. at 350 (3) (same).

 305 Ga. App. 466 (699 SE2d 802) (2010).

 Id. at 469 (2) (punctuation omitted; emphasis supplied).

 See generally id. at 469-73 (2).

 Id. at 473 (2) (emphasis supplied).

 See id. at 469-73 (2).

 (Emphasis supplied.)

 See generally T-Mobile, 305 Ga. App. at 469-73 (2).

 Id. at 472 (2).

 See Smith v. Baptiste, 287 Ga. 23, 25 (1) (694 SE2d 83) (2010) (“The application of the doctrine of stare decisis is essential to the performance of a well-ordered system of jurisprudence.” (punctuation omitted)); A & A Heating & Air Conditioning Co. v. Burgess, 148 Ga. App. 859, 860 (1) (253 SE2d 246) (1979) (“Even those who regard ‘stare decisis’ with something less than enthusiasm recognize that the principle has even greater weight where the precedent relates to interpretation of a statute. Once the court interprets the statute, the interpretation has become an integral part of the statute. This having been done, any subsequent ‘reinterpretation’ would be no different in effect from a judicial alteration of language that the General Assembly itself placed in the statute.” (punctuation omitted)); Ga. Const. of 1983, Art. VI, Sec. V, Par. III (“The decisions of the Court of Appeals insofar as not in conflict with those of the Supreme Court shall bind all courts except the Supreme Court as precedents.”).

 T-Mobile, 305 Ga. App. at 469 (2).

 See id. at 466; see also OCGA § 48-5-380.

 Best Jewelry Mfg. Co., 334 Ga. App. at 835 (3) (a); see Troncalli v. Jones, 237 Ga. App. 10, 12-13 (1) (514 SE2d 478) (1999) (reversing jury verdict as to a tort claim for civil-stalking because nothing in the statute that defines the crime of stalking creates a private cause of action in tort in favor of the victim); Rolleston v. Huie, 198 Ga. App. 49, 50 (2) (400 SE2d 349) (1990) (holding that there is no tort remedy available under OCGA § 16-8-16 for the allegedly unlawful attempt to disseminate information tending to impair appellant’s business because that statute does not create a cause of action in tort in favor of the plaintiff).

 In Anthony v. Am. Gen. Fin. Servs., Inc., 287 Ga. 448 (697 SE2d 166) (2010), the Supreme Court of Georgia held that “a private civil cause of action may not be implied to remedy a violation of OCGA § 45-17-11 [,] which is a criminal statute that regulates the conduct of notaries public. Id. at 459 (2) (d). Nevertheless, the Court explained that its holding “d[id] not necessarily mean that the [plaintiffs] [we]re without any remedy, as they may be able to pursue civil liability against [the defendant] under other applicable tort or contract laws of this State.” Id. at 460 (2) (d). The Anthony Court expressed “no opinion on the viability of such other potential theories of liability.” Id. Similarly, here, I express no opinion as to the viability of any potential theories of liability that the Counties might have in addition to their OCGA § 51-1-6 claim.